## COLL *v.* LEAKE, JUEZ DE DISTRITO.

SOLICITUD para que se expida mandamiento de *Certiorari.*

No. 75.—Resuelto en junio 21, 1911.

ABOGADOS—DESACATO—CRÍTICA DE LAS DECLARACIONES DE UN TESTIGO.—Las manifestaciones hechas en corte abierta por el abogado de una de las partes, expresando que no cree las manifestaciones de ciertos testigos, ni aún hechas bajo juramento, no constituyen un desacato al tribunal ante quien se critican las declaraciones de los testigos en esa forma, pues de acuerdo con la jurisprudencia, el abogado puede atacar la credibilidad de los testigos, y puede aún manifestar que se ha cometido perjurio y que un testigo ha sido sobornado cuando semejante conclusión sea una consecuencia lógica de las declaraciones prestadas ante la corte.

DESACATO—DESOBEDIENCIA DE ORDENES NULAS—JURISDICCIÓN.—La desobediencia de una orden de un tribunal dictada sin jurisdicción para ello, no constituye desacato.

SUSPENSIÓN DE UN ABOGADO—JURISDICCIÓN DE LAS CORTES DE DISTRITO PARA DECRETARLA.—PENA POR DESACATO.—De acuerdo con las leyes vigentes en Puerto Rico, las cortes de distrito no tienen facultades para castigar a un abogado por desacato, suspendiéndolo temporalmente en el ejercicio de su profesión o sea eliminando su nombre de los abogados de récord de una parte, cuya eliminación constituye en realidad una suspensión temporal.

DESACATO—FACULTADES INHERENTES EN LOS TRIBUNALES.—La facultad inherente que los tribunales tienen para castigar por desacato, debe ejercitarse dentro de los límites prescritos en los estatutos.

ID.—FACULTADES GENERALES DE LOS TRIBUNALES PARA CASTIGARLO.—Las facultades conferidas por el párrafo 5 del artículo 7 del Código de Enjuiciamiento Civil a los tribunales, para dirigir la conducta de sus funcionarios y demás personas que comparezcan ante ellos, son de carácter general y deben ejercitarse de acuerdo con las leyes vigentes sobre materia de desacato.

INTERPRETACIÓN DE LEY—PRECEPTOS DE CARÁCTER GENERAL Y PARTICULAR.—Es un principio general de interpretación que dos preceptos legislativos, uno de carácter general y otro particular pueden subsistir al mismo tiempo, aunque al

parecer estén en contradicción, ya sean partes de la misma o de leyes distintas, cualquiera que sea la fecha de su aprobación, entendiéndose que los preceptos de carácter particular califican y constituyen excepciones a los preceptos de carácter general.

Los hechos están expresados en la opinión.

Abogados del peticionario: Sres. *Herminio Díaz Navarro, Cayetano Coll y Cuchí, Tomás Bernardini de la Huerta y Manuel A. Martínez Dávila.*

Abogados del demandado: Sres. *Foster V. Brown, Attorney General, y Jesús M. Rossy, Fiscal.*

Abogados de la parte opositora: Sres. *José Tous Soto y Willis Sweet.*

EL JUEZ ASOCIADO SR. MacLEARY, emitió la opinión del tribunal.

En el presente caso el peticionario, el Sr. Cayetano Coll y Cuchí, abogado, que postula ante las cortes de esta Isla, solicitó un auto de *certiorari* dirigido al Hon. Harry P. Leake, Juez de Distrito del Distrito de Guayama, para revisar ciertas órdenes de aquella corte por las que se le imponía una multa de cien dollars ($100) por desacato, y por las que se le suspendía temporalmente en el ejercicio de su profesión, en cierto caso, mientras no fuera satisfecha la multa. El incidente tuvo su origen en un caso sobre nulidad de elecciones pendiente ante dicha corte, cuya vista había ya ocupado varias semanas, y en el que tomaban parte muchos abogados y se habían examinado gran número de testigos. El día 8 del corriente y durante el curso de la vista, mientras se discutían algunas cuestiones incidentales, el abogado usó cierto lenguaje que el juez estimó improcedente e inmediatamente hizo que se registrara la orden siguiente en el libro de actas:

"Durante las argumentaciones por parte de los demandantes de la evidencia en este caso de Gregorio Valdés Roque, el Sr. Cayetano Coll Cuchí refiriéndose a la evidencia de los dos testigos los letrados Ramos y Abella, dijo: 'En cuanto a los testigos Ramos y Abella debo comenzar manifestando a la corte que yo no creo las manifestaciones de dichos testigos ni aun hechos bajo juramento.' Entonces la corte

le indicó que debía cesar en su argumentación y debía retirar las palabras ofensivas. Y después de la discusión de este asunto el Sr. Coll rehusó retirar las palabras, y entonces la corte le ordenó sentarse y cesar en su argumentación, y le condenó a una multa de cien dollars por desacato a la corte en rehusar obedecer las indicaciones del juez, o en defecto del pago, retirarse definitivamente del pleito.''

Inmediatamente se suspendió la vista y al reanudarse la sesión, el día nueve, el abogado rehusó pagar la multa o retirarse de la dirección del caso, según se le requería en la orden, y la corte seguido dictó la siguiente orden:

''En el día de hoy el Sr. Coll y Cuchí anuncia en corte abierta que no considera que haya cometido ningún desacato. Y para hacer más claro el récord, la corte declara que anoche, durante el juicio en el caso de Gregorio Valdés, los señores Ramos y Abella, ambos letrados de esta corte, declararon con respecto a un incidente de poca importancia que ocurrió en los pasillos de la corte, y que las declaraciones de ellos se referían a la evidencia del testigo Navarro. Más tarde, y durante su argumentación del caso, el Sr. Coll dijo, refiriéndose a la evidencia de los dos señores, lo siguiente: 'En cuanto a los testigos Ramos y Abella voy a comenzar manifestando a la corte que yo no creo las manifestaciones de dichos testigos ni aun hechas bajo juramento.' Y que entonces la corte le indicó que debía retirar esas frases, a lo que se negó. El abogado tiene el derecho de argumentar sobre la evidencia y criticar las declaraciones de los testigos; pero en este caso la corte considera las frases innecesarias, gratuítas y sumamente ofensivas, y provocativas de un incidente desagradable en corte abierta. Se le dió al Sr. Coll la oportunidad de retirar las frases ofensivas y seguir en su argumentación. El Sr. Coll rehusó aceptar la indicación de la corte, y entonces se le ordenó que retirara las frases, siendo ellas ofensivas a la corte, o de no hacerlo se consideraría como un desacato. El Sr. Coll y la corte discutieron entre sí el hecho; y el letrado tuvo repetidas oportunidades de retirar el lenguaje usado sin que por ello se lesionara su dignidad; pero él se negó. Entonces la corte le impuso la multa de cien dollars o en defecto del pago de la misma retirarse definitivamente del pleito. Y en este momento el Sr. Coll manifiesta que no tiene intención de pagar la multa ni de retirarse voluntariamente del pleito. Y por tal motivo, la corte ordena: que se haga una entrada en el récord retirando el

nombre del Sr. Coll como abogado de los demandantes, y que desde este momento el Sr. Coll cesa de tomar participación en corte abierta en este litigio.''

El abogado, el día 10, solicitó de este Tribunal Supremo la expedición de un auto de *certiorari,* alegando en su petición, entre otras puntos, lo siguiente:

''El peticionario alega que el Juez de la Corte del Distrito de Guayama al hacer la orden anterior abusó de su jurisdicción al extremo de ejercitarla fuera de los límites que la ley le concede y siendo por lo tanto dicha orden nula y sin efecto de ninguna naturaleza. Y alega además el peticionario, que la Corte del Distrito de Guayama no tiene jurisdicción para eliminar su nombre como abogado del récord en el indicado pleito sobre nulidad de elecciones, lesionando de una manera grave los intereses de los litigantes que no tienen medios hábiles para sustituir su representación legal actual por otra que se encuentre en las mismas condiciones de conocimientos del asunto.''

Se expidió. oportunamente el auto de *certiorari* y el juez de distrito presentó su contestación a dicho auto el día 15 enviando una transcripción de los procedimientos celebrados en la corte y algunos de los autos originales en la causa, los cuales son muy voluminosos y que consideramos innecesario revisar en su totalidad.

Solamente se han presentado en esta controversia dos cuestiones que requieren nuestra consideración. Y son: 1ª. ¿Se ha cometido desacato alguno?, y 2ª. Suponiendo que el abogado cometiera desacato, ¿podría la corte de distrito obligarle a que se retirara o eliminar su nombre de la dirección del caso en que ocurrió el incidente? Estudiaremos dichas cuestiones en su orden.

En cuanto a la primera cuestión bien podemos examinar el récord para averiguar con exactitud qué palabras eran las que se consideraron ofensivas y que constituían el fundamento de las órdenes dictadas contra el peticionario. Examinaremos primero el informe hecho por el juez de distrito en su contestación sobre este punto. Dice así:

"Entonces se dictó la orden marcada con el No. 1; y mientras se dictaba la misma la corte manifestó que le gustaría tener la certeza de las palabras exactas usadas por el abogado y que según su recuerdo eran que el abogado había dicho en inglés, que él no creía a Ramos y Abella, ni en corte bajo juramento y como testigos ni fuera de la corte como hombres. El abogado negó que hubiera usado exactamente aquellas palabras, pero manifestó que eso era lo que él quiso dar a entender y que si la corte quería hacer consignar esas frases en el récord podía hacerlo. Otro abogado, sin embargo, y a requerimiento de la corte, repitió las frases usadas por el Sr. Coll, y habiendo éste convenido en que aquéllas eran sus frases, así se hicieron constar en el record."

Las palabras textuales, en la orden, son: "En cuanto a los testigos Ramos y Abella debo comenzar manifestando a la corte que yo no creo las manifestaciones de dichos testigos ni aun hechas bajo juramento." El informe hecho por el juez, en su contestación a dicho auto, aunque pudiera servir de aclaración, no nos ha sido sometido como evidencia, y sí solamente como alegación del demandado.

Luego lógicamente debemos primero determinar qué es lo que constituye desacato.

Nuestro estatuto al tratar de este punto, entre otras materias que constituyen desacato, expresa que serán objeto de castigo "Obstinada desobediencia, u oposición intencionada o realizada contra cualquier decreto, mandamiento u orden legal, expedido o dictado por algún tribunal en un pleito o proceso de que estuviere conociendo." (Est. Rev., P. R., apartado 2, artículo 144, p. 87.)

En el mismo sentido se expresa el tomo 9 de Cyc., p. 8-E. Nuestro estatuto es análogo, aunque no en idénticas palabras, al artículo 166 del Código Penal de California. El estatuto de este Estado ha sido interpretado varias veces por su Tribunal Supremo, empezando por el caso de *In re* Cohen and Jones, 5 Cal., 494. Y más tarde en los casos de *People* v. *Dwinells,* 29 Cal., 633; Spencer *ex parte,* 83 Cal., 461; *Cosby* v. *Superior Court,* 110 Cal., 47, y otros más. Nosotros hemos comentado también este estatuto nuestro en diferentes casos,

y en el caso ·de una actriz de Mayagüez declaramos que el hecho de que una persona rehuse o deje de cumplir una orden que la corte no tenía jurisdicción para dictar, no constituía desacato. (*Nuñez* v. *Corte de Distrito de Mayagüez,* resuelto el 20 de marzo de 1908.) Si la orden no es *legal* no puede servir de fundamento para establecer desacato ni para castigarlo.

Pero, ¿se excedió el Sr. Coll, al comentar sobre las declaraciones, de los límites legales que se le permiten al abogado, y cometió por ello desacato, y merece el castigo que se le ha impuesto?

Según dice la "Encyclopedia of Law and Practice," el abogado puede criticar la conducta de las partes; puede impugnar, excusar, justificar, o condenar sus móviles, según los revela la evidencia; puede también atacar la credibilidad de los testigos cuando ésta se encuentra puesta en duda por prueba directa o por la inconsecuencia o incoherencia de sus declaraciones, su manera de declarar, su porté en el momento de declarar, o por otras circunstancias. Cuando semejante conclusión llega a ser una· deducción lógica de las declaraciones que debidamente se han hecho ante la corte, puede él aún manifestar que se ha cometido perjurio, o que un testigo ha sido sobornado.

Encyclopedia of Law and Practice, vol. 5, pp. 326, 327 y 328.

Esta doctrina la apoyan numerosas decisiones de las cuales citamos unas pocas.

*Jones* v. *State,* 50 Tex. Crim. Rep., pp. 195 y 196.

*E. St. L. .C. Ry. Co.* v. *O'Hara,* 150 Ill., 587.

*People* v. *Amaya,* 134 Cal., 539.

*Moore* v. *State,* 52 Tx. Crim. Rep., 343-344.

*People* v. *Rohl,* 138 N. Y., 621.

*People* v. *Ramsey,* 153 Mich., 299.

En uno de los casos referidos se encuentra una opinión del Juez Brooks, de Texas, del cual vamos a extractar algo extensamente:

"Que mientras se dirigía al jurado en el caso de *State of Texas* v. *Bob. Catlin,* y en corte abierta, dicho F. L. Snodgrass, al analizar las declaraciones de los testigos H. N. Beakley y J. M. Crawford, que declararon en la causa, y refiriéndose a dichos dos testigos, manifestó y dijo al jurado, y en presencia y durante la vista de la corte, y en presencia y mientras declaraba el testigo, en sustancia y en efecto, que o bien Beakley o bien Crawford (queriendo indicar los testigos ya mencionados) estaban equivocados, o que uno de ellos mentía. * * *

"Ahora bien, la cuestión que se presenta es, ¿constituye desacato la materia expuesta en la sentencia? Opinamos que nó. Para que exista el desacato no solamente debe tener la corte jurisdicción de la persona del peticionario, sino también del asunto en cuestión, y para dictar la sentencia determinada que se dictó. Tenía jurisdicción del peticionario, pero no del asunto en cuestión, porque carecía de la facultad o autoridad legal para dictar la sentencia contra el peticionario por las manifestaciones hechas según constan en los autos. Si la tuviera anularía el derecho del peticionario a alegar los derechos de su representado en los tribunales de justicia. Es un derecho que la constitución garantiza a toda persona que sea juzgada en los tribunales de este Estado, el ser oída personalmente y por medio de letrado; y ciertamente cuando declaran dos testigos uno a favor y otro en contra de determinada proposición, y existe una contradicción absoluta y completa, solamente se puede deducir una de dos conclusiones—que uno de los dos declaró falsamente, o que uno de los dos se equivocó. La argumentación del peticionario parece haber sido bastante benévola, colocándola en la alternativa. No podía llegarse a otra conclusión, partiendo de las manifestaciones contradictorias, sino que uno de ellos había declarado falsamente o se había equivocado. Parece ésta haber sido una circunstancia importante en la vista del caso, y ciertamente no sólo era el derecho sino también el deber del peticionario para con su representado comentar sobre el hecho, poniéndolo de manifiesto, de que Crawford, testigo del demandado, había dicho la verdad, y que Beakley no lo había dicho. Los tribunales miran con tolerancia el celo y parcialidad del abogado en defensa de su cliente ante los mismos. Sin celo y sin un anhelo leal y ferviente de hacer todo lo que en su poder esté y que sea justo para favorecer los intereses de su representado, y asegurarle un juicio equitativo e imparcial, se destruiría el propósito del abogado, y la toga pronto caería en el descrédito. En el caso de Duncan, 42 Texas Criminal Reports, 661, 2 Texas Court Reports, 402, se suscitó una cuestión muy semejante a la que nos ocupa; y, entre otras cosas,

digimos: 'Debemos manifestar que las facultades de la corte son ofi-
ciales—judiciales, y no personales, y la relación de tribunal y letrado
es correlativa. Los tribunales ejercen y deben ejercer la autoridad
y las funciones judiciales cuando sea necesario, pero de una manera
sancionada por la ley, y en consonancia con la dignidad judicial, y
con el debido miramiento al derecho de las partes interesadas. El
abogado está obligado a obedecer las órdenes legales del tribunal;
mas el tribunal debe invocar su autoridad judicial de acuerdo con la
ley y en cumplimiento de la misma. Las relaciones de tribunal y
abogado, judicatura y foro, son recíprocas, y cada uno, dentro de su
propia esfera, está revestido de facultades, derechos y privilegios que
el otro debe reconocer y respetar. Estas relaciones deben ser reco-
nocidas y respetadas tanto por el juez como por el abogado, y si se
tienen bien presentes y se siguen como norma de acción y de conducta,
se evitarán rozamientos.' No queremos que se nos entienda como que
sostenemos que el tribunal sentenciador no tiene derecho a mantener
el decoro de la sala, ni que sostenemos que el tribunal no podía exigir
al peticionario a que se limitara en su argumento a los hechos adu-
cidos en la prueba, o que al dirigirse al jurado se limitara a hacer
deducciones racionales, propias y decorosas de los hechos aducidos en
la prueba. Estos son los únicos límites que pueden imponerse a los
argumentos del abogado por el tribunal sentenciador. No podemos
concebir cómo el peticionario podía comentar sobre las declaraciones
contradictorias de los testigos de un modo distinto a como lo hizo.
Quizás el peticionario pudo haber evitado el hacer aparecer el testi-
monio de dichos testigos ante el jurado bien como una mentira o como
error, diciendo que una de las partes estaba en error. Aun así, el
jurado habría quedado en libertad de inferir, si así lo deseaba, que
era un error intencionado, y por lo tanto una mentira. Sea de ello
lo que quiera, era una forma justificada de argumentar en la vista
del caso, según nos lo revelan las declaraciones juradas presentadas.
Los tribunales no deben tratar de invadir las atribuciones del abo-
gado, ni dictar una norma en cuanto a la forma de la argumentación
sobre cualquier estado de hechos, como no sea en la forma ya indi-
cada. No creemos que el peticionario infringió la letra o el espíritu
de la ley sobre desacatos; pero, por otro lado, creemos que su argu-
mento era legítimo y pertinente a los hechos que se discuten, y la
imposición de una multa por el juez sentenciador estuvo enteramente
injustificada por la ley y los hechos alegados en la vista del caso.''

No podemos nosotros decir, por consiguiente, que el abo-
gado se había excedido de los límites de la ley en su crítica del

testimonio de los testigos, cualquiera que sea nuestra opinión de la conducta o mal gusto demostrado en el uso de palabras tan cáusticas.

La orden del tribunal tiene que haber sido legal; de lo contrario no puede considerársele con derecho a que se respete y obedezca. El error del tribunal al declarar que las palabras usadas por el abogado, al comentar sobre las declaraciones de los testigos, constituían desacato, invalidó toda acción posterior basada en la misma; y no existiendo jurisdicción para dictar las órdenes que se registraron en el presente caso, dichas órdenes fueron, por consiguiente, nulas.

Se observará que las frases ofensivas las usó el abogado al empezar sus comentarios sobre las declaraciones, y que no se le permitió concluir. Fué interrumpido por el tribunal con una súplica perentoria de que debía retirar las palabras usadas, y parece que se suscitó una larga discusión que duró quince minutos, que no podía conducir a un resultado beneficioso, y que era impropio tanto del tribunal como del letrado. Las palabras usadas no constituían por sí misma desacato. Fueron palabras enérgicas y pudieron considerarse de mal gusto. Pero en sus comentarios sobre las declaraciones debe permitírsele al abogado considerable latitud. Puede ser que si al abogado se le hubiera permitido explicar y continuar sus comentarios, quizás hubiese dado las razones de su incredulidad. Si su opinión con respecto al testimonio era o no cuestión importante, no podía afectar impropiamente el resultado, pues la vista del caso tenía lugar ante el tribunal y no ante un jurado.

Esas palabras del letrado ciertamente que no constituyen desacato; y aunque quizás el acto de negarse a obedecer la indicación de retirarlas pudiera considerarse como tal, porque ello pudiera ser necesario para la conservación del orden, sin embargo, no hay necesidad de que tomemos eso en consideración en vista de lo improcedente del castigo. Aunque el tribunal pudiera haber estado justificado en multar al abogado en la cantidad fijada en la orden, se carecía de autoridad

para eliminar su nombre de la lista de abogados que tomaban parte en el caso, y para requerir que cesara de ejercer sus funciones en el mismo.

Ahora viene la segunda cuestión para su consideración. ¿Qué autoridad tiene un tribunal de distrito en Puerto Rico para suspender a un abogado en el ejercicio de sus funciones como funcionario del tribunal, o para hacerlo en parte, eliminando su nombre de la lista de abogados en un caso determinado? No existe tal autoridad.

Según nuestras leyes, los tribunales de distrito no tienen jurisdicción para admitir abogados al ejercicio de su profesión, ni pueden éstos ser suspendidos temporal o permanentemente en el ejercicio de su profesión por la acción de esos tribunales. Estas funciones le corresponden exclusivamente al Tribunal Supremo de Puerto Rico, y el modo de ejercerlas está precisamente prescrito por el estatuto. (Stats. Rev., P. R., Arts. 39 al 43 y artículos enmendatorios de los mismos: Leyes de Puerto Rico de 1909, pp. 101-103, arts. 9 y 10 de la Ley de 11 de marzo de 1909.) Se sostiene, sin embargo, que la acción del tribunal en el presente caso no fué una suspensión ni temporal ni permanente. No fué una suspensión permanente, pero sí fué una suspensión temporal, por lo que se refería al caso cuya vista se celebraba y durante la duración del mismo, en la corte de distrito, y hasta su conclusión.

Tal fué la naturaleza del castigo impuesto por el supuesto desacato, que al imponerlo la corte ciertamente carecía de autoridad para ello dentro de la ley estatutoria de Puerto Rico. Nuestra ley sobre desacato concede autoridad a las cortes de registro, de las cuales forma parte la corte de distrito, para imponer una multa que no exceda de doscientos dollars ($200), y prisión que no exceda de treinta días o ambas. (Stats. Rev., P. R., art. 145.) A falta de pago el delincuente puede ser encarcelado, dentro de los límites legales, hasta que sea satisfecha la multa. Estos son los únicos métodos prescritos en el estatuto para castigar el desacato. Hasta ahora han resultado suficientes para el mantenimiento del or-

den y el prestigio y dignidad de todos los tribunales de justicia.

Pero se alega con gran vehemencia y argumentos ingeniosos, que todos los tribunales tienen la facultad inherente de castigar por desacato y que el castigo se deja a su discreción en el caso particular que haga necesaria su aplicación. Se citan algunas autoridades para apoyar esta proposición; entre otros se cita el caso de Robinson *ex parte* en 86 U. S., p. 505.

La opinión en este caso, emitida por el difunto Juez Field, dice en parte lo siguiente:

"La facultad para castigar por desacatos es inherente a todos los tribunales; su existencia es esencial para la conservación del orden en procedimientos judiciales, y para hacer cumplir las sentencias, órdenes y mandamientos de los tribunales, y por consiguiente para la debida administración de justicia. Desde el momento que se crearon los tribunales de los Estados Unidos y se les confirió jurisdicción de cualquier asunto, esos tribunales poseyeron esa facultad. Pero la autoridad conferida ha sido limitada y definida por la ley del Congreso de 2 de marzo de 1831. Esa ley, según sus disposiciones, se aplica a todos los tribunales; si puede considerarse como limitando la autoridad del Tribunal Supremo, cuya existencia y facultades se derivan de las Constitución, puede quizás ser objeto de duda. Pero no hay duda que tiene aplicación a las cortes de distrito y de circuito. Estos tribunales fueron creados por ley del congreso. Sus facultades y deberes se basan en la ley que los creó o en leyes posteriores que extendían o limitaban su jurisdicción. Para ellos la ley de 1831 es, por consiguiente, la ley que especifica los casos en que se puede imponer castigos sumarios por desacato. * * *.

"Afortunadamente la ley prescribe el castigo que el tribunal puede imponer por desacatos. El artículo diecisiete de la Ley sobre la Judicatura de 1789 establece que los tribunales tendrán la facultad de castigar los desacatos a su autoridad en cualquier caso o vista que ante los mismos se celebre con multa o prisión, a discreción de ellos. Este decreto circunscribe el modo de ejercer esa facultad, y debe considerarse como una negación de todas las demás formas de castigo. La sentencia del tribunal suspendiendo permanentemente al peticionario, considerada como un castigo por desacato, careció, por consiguiente, de autoridad y era nula. * * *.

"La facultad de suspender permanentemente a un abogado descansa sobre bases distintas. Esta facultad la poseen todos los tribunales que tienen autoridad para admitir abogados al ejercicio de su profesión. Pero esta facultad solamente puede ejercerse en aquellos casos en que ha habido una conducta tal por parte de aquellos contra los cuales se procede, que demuestra que no merecen ser miembros de la profesión. Solamente se admiten individuos al ejercicio de la profesión después de haber probado satisfactoriamente que poseen una buena reputación y suficientes conocimientos legales para defender ante los tribunales las causas de los litigantes. La orden de admisión es la decisión del tribunal que poséen las condiciones requeridas tanto en cuanto a su reputación como a sus conocimientos."

*Ex parte Robinson* (19 Wall.), U. S. Rep., vol. 86, pp. 510, 511 y 512.

Luego esta facultad inherente de los tribunales en casos de desacato debe ejercerse de acuerdo con las disposiciones de los estatutos y está circunscrita a los límites que le fija la autoridad legislativa. Esto sucede con los tribunales de la nación y lo mismo es con los tribunales insulares. Siguiendo el ejemplo del Congreso nuestra Legislatura Insular ha fijado límites a la discreción de los tribunales al imponer castigos por desacato. Estamos obligados a seguir esas leyes, lo mismo que todas las demás, y debemos seguirlas en el ejercicio de nuestras facultades judiciales inherentes y las demás. El gobierno de Puerto Rico como el de Massachusetts y todos los demás Estados de la Unión, es un gobierno de ley y no de hombres.

Se alega que el Tribunal Supremo de Puerto Rico podría, de surgir una oportunidad adecuada, ordenar a un abogado que estuviera argumentando un caso, que se retirara de la dirección del mismo, y suspenderle en sus funciones hasta que cumpliera con las órdenes del tribunal. Sea de esto lo que quiera, las Cortes de Distrito de Puerto Rico no tienen tal facultad. La suspensión aún por un tiempo limitado y refiriéndose a un caso determinado está fuera de su jurisdicción. Estatutos anteriormente citados. Y desde luego cualquier orden dictada por un tribunal sin jurisdicción, es evidente-

mente nula.   La Corte de Distrito de Guayama, en el caso
presente, no tenía autoridad ni jurisdicción para imponer
al abogado la alternativa de pagar una multa o retirarse de
la dirección del caso que defendía ante la misma; ni para eli-
minar su nombre de los autos del caso como abogado.   Como
se ha dicho en el caso de Robinson, el conceder la facultad, por
medio de estatuto, para castigar desacatos mediante multa
o prisión, es negarles a los tribunales toda otra forma de
castigo.   El que hubiera varios otros abogados en el mismo
caso, no cambia la cuestión en lo más mínimo.   Falta la juris-
dicción y las órdenes dictadas eran por consiguiente nulas.

Se ha hecho referencia por el letrado a las facultades con-
feridas a todo tribunal por el artículo 7 del Código de Enjui-
ciamiento Civil, cuyo párrafo quinto les da autoridad "Para
dirigir en bien de la justicia, la conducta de sus funcionarios
y de las demás personas que tuvieren algún interés en cual-
quier procedimiento judicial seguido ante ella o actuación per-
teneciente a dicho procedimiento."   Ésta es una facultad ge-
neral que se ha conferido a todas las cortes de la isla, y debe
ejercerse de conformidad con las leyes vigentes y no con in-
fracción de las mismas.   El Código de Enjuiciamiento Civil
en que se encuentra esta disposición, fué aprobado con el ob-
jeto de establecer los métodos de dirigir los litigios y los pro-
cedimientos judiciales en general; pero esto no es incompa-
tible con otras leyes que se aplican a asuntos determinados de
los cuales el desacato es uno; y los diferentes castigos prescri-
tos por nuestras leyes ofrecen numerosos ejemplos.   Es una
regla muy conocida de interpretación que cuando disposiciones
de carácter general y específico son aparentemente incompa-
tibles, ya pertenezcan al mismo o a diferente estatuto, y ha-
ciendo caso omiso de la prioridad en la promulgación, pueden
subsistir juntamente, la específica calificando y supliendo ex-
cepciones a la general.

*Townsend* v. *Little,* 109 U. S., 512; y casos allí citados.

Por consiguiente, como las palabras por las cuales se mul-
tó al abogado no constituían desacato, y aunque su conducta

posterior pudo quizás serlo, como la corte, no tenía jurisdicción para hacer cumplir la pena imponiendo la multa mediante la eliminación del abogado de la dirección del caso, las dos órdenes dictadas por la corte, contra las cuales se ha establecido el presente recurso, deben anularse y dejarse la situación legal del abogado en la condición en que se hallaba antes de dictarse dichas órdenes. Debe dictarse una sentencia adecuada para efectuar ese resultado.

*Con lugar la solicitud.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Aldrey.

Los Jueces Asociados Sres. Wolf y del Toro disintieron, el primero en absoluto y el segundo en parte.

### OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. DEL TORO.

No puedo estar conforme con la opinión ni con la resolución de la mayoría de los jueces de esta Corte Suprema, en todas sus partes.

Aparece perfectamente claro para mí que la actitud asumida por el letrado recurrente para con la Corte de Distrito de Guayama, es constitutiva de desacato. Se trataba de un juicio sobre impugnación de elecciones. Habían comparecido muchos abogados en defensa de los intereses de ambas partes. La dirección del caso era naturalmente difícil. El juez no sólo en el cumplimiento de sus deberes, estaba obligado a resolver de acuerdo con la ley las cuestiones que fueran surgiendo, sino a mantener y asegurar el orden y la urbanidad en los debates, en bien de la justicia y por el prestigio de la corte y de los abogados que ante ella actuaban y que formaban parte de la misma.

Si tomamos en consideración todas estas circunstancias, tendremos que concluir que cuando el Juez de la Corte de Distrito de Guayama llamó la atención al letrado recurrente sobre las frases que pronunciara refiriéndose a dos de los le-

trados de la parte contraria que habían declarado como testigos, el juez procedió rectamente y con la clara intención de evitar un conflicto enteramente innecesario.

Y si analizamos lo ocurrido después, la discusión que tuvo lugar entre el letrado recurrente y el juez de la corte de distrito, la insistencia del juez en que se retiraran las frases sin desdoro alguno para el honor del letrado que las emitiera, la actitud del recurrente, la orden final de la corte y la desobediencia a la misma, no vemos que pueda llegarse a otra conclusión que no sea la de que el recurrente se colocó en una posición de franca, abierta e insistente desobediencia a una orden de la corte dictada en uso de las facultades que la ley le confiere, y en cumplimiento de los deberes que la ley le impone.

Pero lo que no aparece claro para mí es el poder de la corte de distrito para separar al letrado recurrente de la dirección del pleito principal.

La Asamblea Legislativa de Puerto Rico ha determinado las penas que se pueden imponer a los culpables de desacato. Tales penas, multa o prisión, son suficientes para garantir el buen funcionamiento de los tribunales, y a ellas deben sujetarse las cortes.

Además, separar al letrado recurrente de la dirección del pleito de que se trata, equivalía a suspenderlo de una manera directa en el ejercicio de su profesión al menos en un determinado asunto, y la facultad de suspender o separar abogados en el ejercicio de su profesión, está reservada por la ley a la Corte Suprema de Justicia de Puerto Rico.

En tal virtud opino que aquella parte de las órdenes dictadas por la Corte de Distrito de Guayama, decretando que el letrado recurrente Sr. Cayetano Coll, se separara de la dirección del pleito seguido por *Genaro Cautiño et al.* v. *José Muñoz Vázquez et al.,* sobre impugnación de elecciones, lo fué en exceso de su jurisdicción y debe anularse.