DIEGO GUERRERO NOBLE, peticionario, *v.* TRIBUNAL DE APELACIÓN DE CONTRIBUCIONES DE PUERTO RICO ET ALS., demandados.

Núm. 369.—*Sometido:* Marzo 18, 1942. *Resuelto:* Abril 14, 1942.

*Diego Guerrero Noble, pro se, Luis Dubón, Félix Ochoteco y Benicio Sánchez Castaño*, abogados del peticionario; *Juan E. Soltero Peralta*, abogado de los demandados; *R. Soltero Peralta*, como *amicus curiae*.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El demandante, abogado debidamente autorizado por este Tribunal para ejercer su profesión en esta Isla, en representación de su cliente J. Pérez & Cía., Sucrs., radicó una querella ante el Tribunal de Apelación de Contribuciones de Puerto Rico solicitando se condene al Tesorero de Puerto Ruerto Rico a devolverle el montante de ciertas contribuciones pagadas bajo protesta. Rehusó dicho organismo dar curso al procedimiento, alegando para ello que el demandante no había sido admitido a postular ante el citado tribunal, para lo cual precisaba, no obstante la autorización concedídale por el Tribunal Supremo, que el demandante debía ajustarse a los requisitos prescritos por las reglas numeradas 2 y 3 de aquel tribunal.

La primera de las reglas citadas, bajo el título de "Admisión para Practicar", exige de los abogados admitidos a postular ante la Corte Suprema de Puerto Rico y ante la Corte de Distrito de los Estados Unidos para Puerto Rico, que radiquen una solicitud de autorización para practicar ante el Tribunal de Apelación, acompañada de un certificado del secretario de la corte ante la cual el solicitante fué admitido a postular y otra del Secretario del Colegio de Abogados de Puerto Rico, acreditativa de que fué admitido y de que su licencia no está cancelada o suspendida. El solicitante, de acuerdo con dicha regla, deberá acreditar que nunca ha sido suspendido ni separado (*disbarred*) de la práctica de su profesión; consignará bajo juramento que ha estudiado detenidamente las reglas de práctica del Tribunal de Apelación de Contribuciones de Puerto Rico, así como la legislación contributiva y sus reglamentos administrativos, y que se considera debidamente capacitado para asumir la representación de clientes que fueren partes en casos que se radiquen en aquel tribunal. No obstante ser el solicitante un abogado admitido al ejercicio de su profesión por este Tribunal, el Tribunal de Apelación, de conformidad con la regla 2, podrá denegar la solicitud de admisión si a su juicio dicho solicitante no llena los requisitos para practicar ante el mismo. Aceptada que sea la solicitud, el aspirante deberá prestar un juramento en términos similares al que prestó en este Tribunal al admitírsele al ejercicio de su profesión.

Por la regla 3, bajo el título "Suspensión y Separación (*Disbarment*)", el citado tribunal se reserva el derecho de suspender o separar (*disbar*) a cualquier persona después de haber sido admitida, cuando a su juicio dicha persona no posea los requisitos o cualificaciones para representar a otros o carezca de las cualidades de moralidad e integridad necesarias para practicar, o por conducta profesional impropia. Prescribe además la citada regla 3 que ninguna persona será suspendida por un período mayor de 60 días ni será sepa-

rada (*disbarred*) sin antes darle la oportunidad de ser oída; que ''el tribunal podrá inmediatamente suspender a cualquier persona admitida, por no más de 60 días, por desacato o conducta impropia durante el curso de cualquier procedimiento,'' y por último que ''cualquier información falsa en la solicitud para admisión, o en cualquier documento radicado por persona admitida, será suficiente causa para tal persona ser separada (*disbarred*) de practicar ante el tribunal.''

Alegando el demandante que el tribunal demandado carece de facultades para exigirle tales requisitos y que por el contrario tiene el deber ministerial de admitirle a postular mientras la licencia que le expidió el Tribunal Supremo de Puerto Rico no le sea suspendida o cancelada por este último, radicó este recurso de mandamus para que se ordene a los demandados al cumplimiento del alegado deber. Expedido el auto alternativo, comparecieron los demandados oponiéndose a las pretensiones del demandante. Para la mejor inteligencia de las cuestiones a resolver en este recurso, conviene en primer término conocer la naturaleza del tribunal en cuestión, así como las facultades que le han sido conferidas. A ese fin, examinemos las secciones 1, 3, 4, 5 y 7 de la ''Ley para crear el Tribunal de Apelación de Contribuciones de Puerto Rico, determinar su organización, autoridad y funcionamiento, establecer su jurisdicción . . . '', aprobada el 13 de mayo de 1941 (Leyes de 1941, pág. 1039).

Por la sección 1ª. se crea el Tribunal de Apelación, compuesto de un presidente y cuatro miembros asociados. El presidente será el oficial ejecutivo del tribunal, encargado de poner en vigor todos sus acuerdos, órdenes y resoluciones, y será un abogado con práctica activa en el ejercicio de su profesión en Puerto Rico por un término no menor de 10 años, y de los cuatro miembros asociados, uno será un contador público autorizado de reputación y experiencia; otro será un ingeniero civil, de reputación y práctica profesional en Puerto Rico por un término no menor de diez años; otro

será un ingeniero agrónomo, con cualificaciones similares a las del ingeniero civil; y el otro, un hombre de negocios o economista versado en cuestiones contributivas, las que justificará por sus trabajos realizados con anterioridad a su nombramiento.

La sección 3 prescribe que el tribunal funcionará con un carácter cuasijudicial, dictando las reglas que fueren necesarias a los fines de regular los procedimientos que se lleven a cabo ante él; que dichas reglas harán constar específicamente que toda reclamación ante el tribunal se iniciará por medio de una querella jurada que deberá presentar el reclamante por sí o por medio de un representante debidamente autorizado, y en dicha querella expondrá clara y concisamente los hechos y principios legales en que base su reclamación. También determinarán las reglas la notificación de toda querella al Tesorero de Puerto Rico, debiendo entregarse copia de la misma a dicho funcionario en su oficina y debiendo éste contestarla por escrito y comparecer en todos los casos representado por un funcionario del Departamento de Justicia de Puerto Rico. Prescribe también la sección 3 que después de presentar la querella, los procedimientos subsiguientes, incluso la práctica de la prueba que fuese necesaria para dictar una resolución, los determinará el tribunal en sus reglas de procedimiento, y en los casos que no estuvieren claramente especificados en las reglas, se aplicarán las disposiciones del Código de Enjuiciamiento Civil que regulan los procedimientos ante las cortes de distrito. Se le confiere además jurisdicción para revisar la tasación y retasación de la propiedad mueble o inmueble, y conocerá de todas las reclamaciones que pudieran formularse ante dicho tribunal por personas interesadas contra las resoluciones del Tesorero de Puerto Rico que afecten al impuesto y pago de contribuciones sobre la propiedad, de la contribución sobre ingresos y de la de transmisión de bienes por herencia. Pero esta jurisdicción no podrá invocarse hasta que haya recaído una

resolución administrativa por parte del Tesorero de Puerto Rico sobre el asunto en controversia.

Prescribe la sección 5 que después que haya quedado trabada la controversia mediante la querella y la contestación, el tribunal procederá a la prueba que fuere necesaria y a llevar a cabo todos aquellos actos pertinentes para su mejor ilustración, con el fin de rendir una resolución justa de acuerdo con la ley. Terminada la práctica de la prueba y cualquier investigación adicional ordenada por el tribunal, se procederá a su consideración dictándose la decisión por la mayoría del tribunal. Estas decisiones tendrán carácter de finales, pero la parte perjudicada podrá, dentro de los treinta días después de haberse rendido la decisión, recurrir para ante el Tribunal Supremo por *certiorari* para revisar los procedimientos. Pero este último tribunal al conocer del caso tendrá que basar su decisión exclusivamente en las constancias de los autos. En otras palabras, no podrá recibir prueba adicional; prescribiéndose además que la interposición de dicho recurso no suspende los efectos de la decisión recurrida, la cual será ejecutoria desde luego, sujeta por supuesto a la sentencia del Tribunal Supremo.

Por último, la sección 7 autoriza al Tribunal de Apelación para dictar un reglamento interno regulando su funcionamiento.

Las disposiciones de la citada ley claramente demuestran que la práctica ante el Tribunal de Apelación de Contribuciones requiere conocimientos y técnica jurídicos. Para poder postular ante dicho Tribunal precisa en primer término que el postulante conozca los principios fundamentales de Derecho y especialmente los relativos a la Ley de Contribuciones, no sólo para poder aconsejar a su cliente sobre si procede o no la reclamación, sino para la preparación de la querella, donde deberá exponer los principios legales en que base su reclamación. Luego de trabada la controversia, en la celebración de la vista del caso, necesitará conocer las re-

glas de procedimiento y especialmente las de la Ley de Evidencia en cuanto fueren aplicables, no sólo para lograr la ordenada y correcta presentación de su prueba, sino para evitar, en defensa de los intereses que le han sido confiados, que se presente por su oponente evidencia inadmisible o irrelevante tendente a desviar al tribunal de la verdadera cuestión en controversia. La correcta presentación de la prueba es de excepcional importancia en la práctica ante dicho tribunal, pues el remedio de revisión ante el Tribunal Supremo que concede la ley no es como el que se daba contra las resoluciones de la Junta de Revisión e Igualamiento, que consistía en un pleito ordinario ante la corte de distrito, donde se ofrecía de nuevo la evidencia pertinente de acuerdo con las nuevas alegaciones, y cualquier error de procedimiento en que hubiera podido incurrir una parte en dicha junta, en ninguna forma podía perjudicarle en el nuevo pleito ante la corte de distrito. Dentro del certiorari que se concede para revisar las decisiones del Tribunal de Apelación de Contribuciones, no puede considerarse evidencia alguna que no conste de los autos, y naturalmente requiere que el postulante haya presentado correctamente su caso a fin de que el Tribunal Supremo, al revisar el procedimiento, esté en condiciones de hacer cumplida justicia.

Mucho se ha escrito sobre lo que constituye el ejercicio de la abogacía y no vamos a extender innecesariamente esta opinión discutiendo las distintas fases que ofrece la práctica de la profesión de abogado. Bastará a ese efecto referirnos al artículo de Frederick C. Hicks y Elliot R. Katz titulado *"The Practice of Law by Laymen and Lay Agencies"*, publicado en 41 Yale L. J. 69, y a la opinión disidente del Juez Stephens en el caso de *Merrick et al.* v. *American Security & Trust Co.*, 107 F. 2d 271, 278, donde ampliamente se discute la cuestión. Puesto que la fase que está envuelta en este caso es la práctica que se lleva a efecto en un tribunal o junta de carácter cuasijudicial, a ella exclusivamente diri-

giremos nuestra atención. En la monografía que aparece en 111 A.L.R. 19, 32, refiriéndose a esta cuestión, se dice:

"Para determinar si la participación de una persona en representación de otra en las audiencias o procedimientos de una junta o comisión constituye el ejercicio de la abogacía, la naturaleza del acto y no del sitio donde se realiza, se ha dicho que constituye el factor decisivo. Así pues, cuando es preciso aplicar conocimiento y técnica jurídicos, esa actividad constituye el ejercicio de la abogacía aunque se lleve a efecto ante una junta o comisión."

Véase también *People ex rel. Chicago Bar Ass'n* v. *Goodman*, 111 A.L.R. 1.

Si a la forma en que funciona el Tribunal de Apelación de Contribuciones de Puerto Rico de acuerdo con la ley que lo creó, aplicamos el criterio anteriormente expuesto, fácilmente llegaremos a la conclusión de que dicho tribunal ejerce funciones cuasijudiciales. Si la jurisdicción de dicho tribunal es de naturaleza cuasijudicial, sus puertas deberán estar abiertas a los abogados como si de un tribunal de justicia se tratase. Siendo ello así, ¿puede exigirse al demandante como condición precedente para poder postular ante dicho tribunal, que cumpla con los requisitos prescritos por las reglas anteriormente reseñadas?

La facultad de autorizar al ejercicio de la abogacía ha sido siempre prerrogativa exclusiva del poder judicial. Esa prerrogativa tiene raíces muy hondas en la Ley Común. Del artículo de Blewett Lee, publicado en 13 Harvard Law Review 233, tomamos el siguiente extracto sobre la historia de la admisión al ejercicio de la abogacía:

"En 1292, Eduardo I dictó una orden por la cual designó al *Lord Chief Justice of the Court of Common Pleas* y a sus demás colegas de aquella corte para que de acuerdo con su discreción escogiesen de cada condado ciertos abogados que fuesen los mejores y más aptos por sus conocimientos y habilidades y que pudiesen servir a la corte y al público, y que los así escogidos y no otros, siguieran a la corte y despachasen sus asuntos. Dicho Rey y su Consejo estimaban entonces que el número de ciento cuarenta era suficiente, pero se dejó

a la discreción de los jueces aumentar o disminuir dicho número de acuerdo con su criterio. (I Pollock & Maitland, *History of English Law*, 194; *Dugdales' Orig. Jurid.* 141.) La profesión de abogado fué puesta bajo el control de los jueces y la discreción para examinar aspirantes en cuanto a sus conocimientos y cualificaciones y para su admisión al ejercicio de la abogacía era ejercitada día tras día por el departamento judicial del. gobierno inglés, y ninguna ley trató de privarle de ese poder o de transferirlo a cualquier otra rama del gobierno. El Parlamento legisló sobre la materia, pero la legislación tenía por objeto excluir personas no preparadas para ejercer, que constituían una amenaza para el bien público por su ignorancia o indignidad. Los estatutos siempre reconocieron que la admisión de abogados era una cuestión que incumbía esencialmente a las cortes como cuestión de discreción judicial y solamente tendían a proteger al público contra personas impropias. La primera de estas leyes fué la de 4 Henry IV, c. 18, pasada en 1403. El número de abogados había crecido a dos mil y la ley, exponiendo que los daños y males provenían del número de abogados ignorantes de la profesión, ordenó y estableció que todos los abogados fuesen examinados por los jueces y de acuerdo con su discreción sus nombres se inscribían en el registro, y los de aquellos que no servían eran eliminados de acuerdo con la discreción de los jueces, notificándose a los clientes de estos últimos para que empleasen otros abogados en lugar de aquéllos, evitando así que pudiese causarse perjuicio a dichos clientes. (Maugham, *Attorneys*, Ap. 9.) En 1413, por el estatuto 1 Henry V, *undersheriffs*, *sheriffs*, secretarios, *receivers* y alguaciles fueron excluídos de la práctica de la profesión, porque 'las personas que debían servicios feudales al rey (*the king's liege people*) no se atrevían a perseguir o a quejarse de las extorsiones y opresiones de que eran víctimas por parte de los oficiales de los *sheriffs*.' En 1455, por el estatuto 33 Henry VI, c. 7, el Parlamento limitó el número de abogados para Suffolk, Norfolk y Norwich, diciendo que el número había excedido de ochenta, 'la mayoría de los cuales, no teniendo suficientes conocimientos, incitaban al público a pleitear por pequeñeces.' En 1606, por el estatuto 3 James I, c. 7, se intentó reglamentar con más amplitud la abogacía. (Maugham, *Attorneys*, Ap. 13.) El Parlamento, por ninguna de estas leyes, trató de determinar los conocimientos que debía tener una persona para darle derecho a admisión. Las cortes, de tiempo en tiempo, dictaban sus reglas relativas a la admisión de abogados y en ocasiones proveían para el nom-

bramiento de un comité o junta de examinadores. (Maugham, *Attorneys,* Ap. 14, 16.) Blackstone dice (3 Com. 26): 'Estos abogados están ahora organizados en cuerpos regulares; son admitidos a la práctica de su profesión por las cortes de Westminster Hall ... Nadie puede postular como abogado en alguna de dichas cortes que no haya sido admitido y haya prestado juramento como abogado de esa corte en particular; un abogado de la corte de *King's Bench* no puede postular en la corte de *Common Pleas,* ni viceversa. .... Así pues, aun tan remotamente como desde el estatuto 4 Henry IV, c. 18, se había legislado que los abogados fuesen examinados por los jueces y nadie era admitido que no fuese virtuoso, conocedor de la ley y que no hubiese jurado cumplir su deber.' '' (Págs. 388–340.)

Esa prerrogativa a favor del poder judicial que se inició por un decreto de Eduardo I de Inglaterra en 1292, se ha mantenido inalterada hasta nuestros días. En el caso de *People ex rel. Chicago Bar Ass'n* v. *Goodman,* supra, pág. 40, se dijo por la Corte Suprema de Illinois:

"El poder para regular y definir la práctica de la abogacía es una de las prerrogativas del departamento judicial, como una de las tres ramas del gobierno creadas por el artículo 3 de nuestra Constitución. El poder legislativo puede legislar declarando ilegal la práctica de la abogacía sin haber sido debidamente autorizado para ello. Tales estatutos operan en auxilio de y no suplantan o menoscaban la facultad del poder judicial para controlar el ejercicio de la abogacía. *In re Day,* 181 Ill. 73, 54 N. E. 646, 50 L.R.A. 519; *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n* (R. I.), 179 A. 139, 100 A.L.R. 226. Esta corte tiene el poder inherente de prescribir reglas para el estudio del Derecho, y para la admisión de aspirantes al ejercicio de esa profesión. *People* v. *People's Stock Yards State Bank,* 344 Ill. 462, 176 N. E. 901; *In re Day,* supra. Como un incidente de esa facultad esta corte tiene jurisdicción para disciplinar o separar del ejercicio de la abogacía (*disbar*) por justa causa a los abogados por ella autorizados a postular."

En el gobierno de esta Isla también existe la división de poderes, a saber: ejecutivo, legislativo y judicial, y el artículo 40 de nuestra Ley Orgánica, al definir el poder judicial, prescribe que éste residirá en las cortes y tribunales de Puerto Rico. Claro es que siendo nuestro Tribunal Supremo

el más alto de dichos tribunales y cortes, a él incumbe ejercitar, con exclusión de los demás, una prerrogativa similar a la que en 1292 inició Eduardo I de Inglaterra a favor de la Corte de *Common Pleas*. En efecto, la ha venido ejercitando ininterrumpidamente, y la ha defendido y reclamado cuantas veces se ha pretendido usurpársela. Hace treinta y un años, cuando en el caso de *Coll* v. *Leake, Juez de Distrito*, 17 D.P.R. 857, 866, una corte de distrito, en el curso de un juicio dictó una orden que equivalía a suspender temporalmente a un abogado en el ejercicio de su profesión, este Tribunal, por voz de su Juez Asociado Sr. MacLeary, se expresó así:

"Ahora viene la segunda cuestión para su consideración. ¿Qué autoridad tiene un tribunal de distrito en Puerto Rico para suspender a un abogado en el ejercicio de sus funciones como funcionario del tribunal, o para hacerlo en parte, eliminando su nombre de la lista de abogados en un caso determinado? No existe tal autoridad.

"Según nuestras leyes, los tribunales de distrito no tienen jurisdicción para admitir abogados al ejercicio de su profesión, ni pueden éstos ser suspendidos temporal o permanentemente en el ejercicio de su profesión por la acción de esos tribunales. Estas funciones le corresponden exclusivamente al Tribunal Supremo de Puerto Rico, y el modo de ejercerlas está precisamente prescrito por el estatuto. (Stats. Rev., P. R., Arts. 39 al 43 y artículos enmendatorios de los mismos: Leyes de Puerto Rico de 1909, págs. 101–103, arts. 9 y 10 de la Ley de 11 de marzo de 1909.)"

Y no han transcurrido tres años desde que en el caso de *Ex parte Jiménez*, 55 D.P.R. 54, 55, este Tribunal, por voz de su Juez Asociado Sr. Travieso, nuevamente defendió esa facultad en los siguientes términos:

"La admisión de una persona al ejercicio de la abogacía es una función de carácter puramente judicial. Entre las facultades inherentes a la rama judicial de nuestro Gobierno está la de determinar los requisitos que deberán cumplir y las cualidades que deberán reunir los solicitantes de una licencia para ejercer como abogados ante sus tribunales."

En reconocimiento de ese poder en el Tribunal Supremo, nuestra Legislatura, al organizar el Colegio de Abogados de Puerto Rico por la ley núm. 43, aprobada en 14 de mayo de 1932 (Leyes de 1932, pág. 523), dispuso en su artículo 4 que "Serán miembros del Colegio todos los abogados que estén admitidos a postular ante el Tribunal Supremo de Puerto Rico . . . ", y por su artículo 12 excluyó del ejercicio de la profesión al que no hubiese sido así admitido al prescribir:

"Art. 12. Toda persona que sin ser debidamente admitida y licenciada para el ejercicio de la profesión según se dispone por esta Ley o que durante la suspensión de su licencia practique como persona capacitada para ello, se anuncie como tal o trate de hacerse pasar como abogado en ejercicio, será culpable de un delito menos grave; y convicta que fuere, se le impondrá multa no menor de cien (100) dólares o prisión por período no menor de dos meses, o ambas penas."

Aparentemente las reglas del Tribunal de Apelación de Contribuciones en cuanto a la admisión de abogados para postular ante él respecta, no menoscaban la facultad de este Tribunal Supremo para determinar quiénes pueden ejercer la profesión de abogado en las cortes de justicia y centros o juntas de naturaleza cuasijudicial. Pero a poco que se examinen las reglas en cuestión, se advertirá que no se da cumplido y absoluto crédito a las resoluciones de este Tribunal Supremo admitiendo aspirantes al ejercicio de la abogacía, toda vez que a dichos abogados se les exigen requisitos adicionales que no hay derecho a exigirles, y se reserva el Tribunal de Apelación la facultad de no admitirlos si a su juicio y no obstante haber declarado lo contrario este Tribunal, dichos abogados no están capacitados para ejercer ante él, reservándose además el derecho de suspenderlos temporal o permanentemente en el ejercicio de su profesión ante aquel tribunal, prerrogativa ésta que como hemos visto, corresponde al poder judicial representado por la Corte Suprema de Puerto Rico.

Los demandados invocan en apoyo de su facultad para dictar las reglas en cuestión, la decisión de la Corte Suprema de los Estados Unidos en el caso de *Goldsmith* v. *U. S. Board of Tax Appeals,* 270 U. S. 117, 70 L. ed. 494. La jurisprudencia establecida en ese caso tiene perfecta aplicación dentro del sistema judicial federal, donde el *bar* no está centralizado y cada corte tiene derecho a su propio bar, independiente por completo del de las demás cortes federales. Así vemos que un abogado admitido a postular en la Corte Suprema de los Estados Unidos no tiene derecho a postular ante cualquier otra corte federal a menos que cumpla con los requisitos exigidos para admisión en esta última, y un abogado admitido a postular, digamos por la Corte de Circuito de Apelaciones para el Primer Circuito, no tiene derecho por esa sola razón a postular en las cortes de distrito de dicho circuito. Es más, si en vez de Puerto Rico constituir un solo distrito judicial federal, estuviese dividido en dos o más distritos, cada una de las cortes de esos distritos tendría su propio bar, distinto e independiente del de las otras. Véase a este efecto el artículo de J. S. Waterman, Decano de la Escuela de Leyes de la Universidad de Arkansas, titulado *"The Federal Bar: A Decentralized System of Admission and Disbarment,"* publicado en 20 American Bar Association Journal 762, el primer párrafo del cual dice así:

"La sección trigésimaquinta del *Judiciary Act* de 1789, indicativa de un sistema judicial compuesto de cortes independientes unas de otras, disponía que cada corte federal adoptase reglas para gobernar la admisión de los que debieran practicar ante ella. Este sistema no centralizado de admisión existía en algunas de las colonias, y por consiguiente su adopción por el Congreso al establecer el nuevo sistema de cortes federales no fué una innovación."

Véase al mismo efecto la obra de Frankfurter y Landis, *"The Business of the Supreme Court.—A Study in the Federal Judicial System,"* página 218.

El "Board of Tax Appeals," siendo como es una agencia federal con facultades cuasijudiciales, tiene derecho a orga-

nizar su propio bar, y como la admisión de un abogado por una corte federal no le da derecho a postular en otras cortes a menos que sea admitido en ellas, es claro que tales abogados no tendrían derecho a postular en el Board of Tax Appeals, como tampoco podrían hacerlo en otras cortes federales a menos que fuesen admitidos de acuerdo con las reglas de dichas cortes. Tampoco pueden postular en el Board of Tax Appeals los abogados de los distintos estados, porque tratándose de una agencia federal, necesitan ser admitidos ante ella, puesto que la admisión a postular por la Corte Suprema de sus respectivos estados no les autoriza a postular en las cortes federales sin previa admisión.

En Puerto Rico, como en los estados de la Unión, el bar está centralizado. Existe un solo bar y la admisión por parte de la Corte Suprema de Puerto Rico autoriza al abogado así admitido, a postular en todas las cortes de la Isla de Puerto Rico, así como en las juntas o comisiones insulares que ejercitan facultades cuasijudiciales.

█ Por último, arguyen los demandados que el remedio adecuado no es el mandamus y sí el de certiorari, porque de acuerdo con la ley que crea y organiza la Corte de Apelación de Contribuciones, sus decisiones sólo pueden revisarse por medio de certiorari ante la Corte Suprema de Puerto Rico. Esas decisiones revisables por certiorari son aquéllas que el tribunal dicta en el ejercicio de su jurisdicción; pero la cuestión suscitada por el demandante es completamente ajena a la jurisdicción concedida por la Legislatura a dicho tribunal, y teniendo el demandante un derecho claro a postular ante el Tribunal de Apelación de Contribuciones, siendo deber ministerial de éste admitirlo a postular por el solo hecho de haber sido admitido a ejercer la profesión por la Corte Suprema de Puerto Rico y no haberle sido suspendida ni revocada su licencia, *procede la expedición del auto perentorio de mandamus para obligarle a cumplir el indicado deber ministerial.*

El Juez Asociado Sr. Travieso no intervino.