[Civ. No. 5674.  First Appellate District, Division Two.—August 26, 1926.]

RAYMOND H. CRUMMEY, Petitioner, v. W. L. POPP et al., Respondents.

[1] STREET LAW—IMPROVEMENT ACT OF 1911—ALTERNATIVE METHOD— STATUTORY CONSTRUCTION.—The Improvement Act of 1911 provides an alternative method for all public improvements specified in section 2 of said act and was intended to be all-inclusive, though not repealing any of the other acts providing for similar improvements; and where any provision of said act is susceptible

1. See 19 Cal. Jur. 363.

of two interpretations—one which would effect the intent that the act be complete in itself, and the other which would require resort to some other act or proceeding—the former interpretation should be favored.

[2] ID.—METHODS OF ASSESSMENT—FRONTAGE AND DISTRICT PLAN.— Every improvement contemplated by the Improvement Act of 1911 may be paid for under the "district" plan of assessment when so determined by the city council under the provisions of section 4 of the act; and the provisions of the entire act are applicable to both the "district" and the "frontage" methods of assessment, except in the few instances where special distinctions are made.

[3] ID. — DISTRICT PLAN — ELECTION OF PROPERTY OWNERS TO TAKE WORK—DIFFICULTY IN ASCERTAINING NUMBER.—The provision of section 12 of the Improvement Act of 1911 that "the owners of three-fourths of the frontage of lots and lands liable to be assessed" may elect to take the work and enter into a written contract to do the whole work at the price at which the same has been awarded, being general, must be held to include contracts awarded under both the "frontage" and the "district" plan of assessment; and the fact that it may be difficult to ascertain the correct number of owners where the assessment district includes the entire municipality is a consideration to be addressed to the legislature and not the court.

---

(1) 36 **Cyc.**, p. 1110, n. 54, p. 1111, n. 58, p. 1146, n. 20.    (2) 28 **Cyc.**, p. 961, n. 56.    (3) 12 **C. J.**, p. 887, n. 38; 28 **Cyc.**, p. 961, n. 56, p. 962, n. 57, 58.

PROCEEDING in Mandamus to compel a City Superintendent of Streets to enter into a street work contract with petitioner.    Writ denied.

The facts are stated in the opinion of the court.

R. M. F. Soto for Petitioner.

Archer Bowden, City Attorney, and Randolph V. Whiting, for Respondents.

LANGDON, P. J.—This is an original proceeding in *mandamus* to require the respondent superintendent of streets to enter into a contract with petitioner for the performance of certain street improvements in the city of San

---

2.    See 19 **Cal. Jur.** 368.

Jose, and to require the respondent city manager to approve a bond offered by petitioner to secure the payment of labor and materials under such contract. The respondents defend upon the ground that the respondent Clark, as agent of property owners, is entitled to the contract instead of the petitioner.

It would serve no useful purpose to outline the pleadings or the facts of the case. It is sufficient to say that it is conceded that the municipal authorities initiated proceedings for the improvement of a public street under the "Improvement Act of 1911" (Stats. 1911, p. 730; Deering's Gen. Laws 1923, Act No. 8199), and that all these proceedings were in due form and within time until the respondent Clark, as agent for the property owners, gave notice that they elected to take the contract at the same price at which it had been awarded to the petitioner. The claims of the respective parties arose at this point in the proceedings and the sole question to be determined on this action is whether, under section 12 of the "Improvement Act of 1911," where the improvement is to be made under the district plan, property owners may elect to take over the contract.

[1] The act in question provides an alternative method for all public improvements specified in section 2 and was intended to be all-inclusive, though not repealing any of the other acts providing for similar improvements. Any interpretation of the act must therefore be made in view of the well-known rule that where one act is intended to be complete in itself and some specific provision therein is susceptible to two interpretations—one which effects that purpose, and the other which would require resort to some other act or proceeding—the former interpretation should be favored.

The specific provision which is in issue here is found in section 12, reading, in part, as follows: "The owners of three-fourths of the frontage of lots and lands liable to be assessed . . . may . . . elect to take said work and enter into a written contract to do the whole work at the price at which the same has been awarded." The petitioner argues that this section is applicable only when the work has been agreed to be done on the "front-foot" plan of assessment, while the respondents argue that it is appli-

cable to work to be done under the "district" plan of
assessment as well.

[2]   Looking at the act as a whole it is apparent that
the legislature provided for both methods of assessment
and expressly included the "district" plan in section 4
where the council was expressly authorized to adopt that
plan whenever the contemplated improvement "is of more
than local or ordinary public benefit, or . . . the total
estimated costs and expenses thereof would exceed one-
half the total assessed value of the lots and lands assessed."
In section 79 the meaning of the words "work" and "im-
provement" as used in the act is defined to "include all
work mentioned in this act." Thus every improvement
contemplated by the act may be paid for under the "dis-
trict" plan of assessment when so determined by the coun-
cil under the provisions of section 4. With but a few
exceptions, all the proceedings required to be taken down
to the award of the contract are the same under either
method of assessment. Throughout the act we find a very
definite policy on the part of the framers of the act to
provide a complete scheme for the improvement of streets
under both methods of assessment, and we also find that
the provisions of the entire act are applicable to both of
these methods except in the few instances where special
distinctions are made.

[3]   Turning to section 12 we find that provision was
made whereby the owners "liable to be assessed" might
take over the contract and do the work in their own
behalf. There is here no distinction between owners
liable to be assessed under the "front-foot" and "district"
plans of assessment. The terms are general and must be
held to include contracts awarded under both plans, as to
hold otherwise would necessitate our writing into the sec-
tion an exception which the legislature has given no indi-
cation that it intended to be there.

The section provides that "the owners of three-fourths
of the frontage of lots and lands liable to be assessed"
may elect to take over the contract. From this it is ar-
gued that the election can be had only when the work is
done on the frontage plan of assessment, because other-
wise it would be difficult to determine the true owners of
a sufficient amount of frontage. But the "district" plan

may be adopted when the improvement is confined to lots fronting on the street improved if the work is of more than ordinary public benefit or if the cost of the work is more than one-half of the assessed value of the lots assessed. No reason has been suggested why the owners should not be permitted to take over the work in such a case. The fact that it would be difficult to ascertain the correct number of owners where the assessment district included the entire municipality is a consideration to be addressed to the legislature.

Petition denied and writ discharged.

Nourse, J., and Sturtevant, J., concurred.