Ex parte Eduardo Urrutia, peticionario. Ex parte Antonio Escalera, peticionario.

Nos. 66 y 33A.—*Sometidos:* Noviembre 30, 1931. *Resueltos:* Marzo 7, 1932.

*Juan Lastra, M. A. Martínez Dávila* y *A. Arroyo,* abogados de los peticionarios Sr. Escalera y Sr. Urrutia, respectivamente; *Lcdos. Rafael Buscaglia, Edelmiro Martínez Rivera* y *José M. Calderón,* por los opositores; *J. Ramírez Santibáñez,* a nombre del Colegio de Abogados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

█ Un número de abogados en ejercicio y la Asociación de Abogados de Puerto Rico se oponen a la admisión de estos dos candidatos a examen, e impugnan la constitucionalidad de dos resoluciones conjuntas, números 58 y 69, Leyes de 1931, páginas 1015 y 1051.

La parte pertinente de la resolución número 58 lee así:

"Por la presente se faculta a don Eduardo Urrutia Martorell a sufrir examen de reválida ante el Tribunal Supremo de Puerto Rico de la carrera de abogado y a dicho Tribunal Supremo a concederle dicho examen el día y hora que éste determine, previa solicitud del interesado, siempre que éste acredite poseer diploma de abogado de la 'Chicago School of Law,' que es una Universidad acreditada, de Chicago, y todos los demás requisitos alegados en los por cuantos de esta Resolución, y si el aspirante fuese aprobado en dicho examen el Tribunal Supremo deberá expedirle la correspondiente licencia para ejercer la abogacía en la Isla de Puerto Rico."

La médula de la resolución número 69 la contiene un párrafo del tenor siguiente:

"POR TANTO, *Resuélvese por la Asamblea Legislativa de Puerto Rico:*

"Sección 1.—Autorizar, como por la presente autoriza a Antonio Escalera a sufrir el examen de reválida ante el Tribunal Supremo de Puerto Rico, y a dicho Tribunal Supremo a concederle dicho examen el día y hora que éste determine, previa solicitud del interesado, y a la presentación de su diploma de abogado, y previa presentación del informe favorable de la Comisión de Reputación, ante el

referido Tribunal Supremo de Puerto Rico, el cual, una vez cumplidos dichos requisitos y aprobado el examen le tomará el debido juramento y ordenará que su nombre sea inscrito en el Registro de Abogados, con todas las prerrogativas y derechos del caso.''

La política de la mayoría de los tribunales es asentir a toda disposición legislativa razonable en torno a la capacidad de los aspirantes a ser admitidos al Foro. 2 R.C.L. 942, sección 7; nota al margen del caso *Re Applicants for License to Practise Law,* 10 L.R.A. (N. S.) 289.

La Corte Suprema de Pennsylvania, en *In re Olmsted,* 140 Atl. 634, 636, enuncia como buena la regla de que:

''. . . Los estatutos relativos a admisión al ejercicio de la abogacía serán reconocidos judicialmente como válidos en tanto que la legislación envuelta no invada el derecho de los tribunales a decir quién tendrá el privilegio de postular ante ellos y bajo qué circunstancias se concederá esa gracia.''

En otro caso reciente, *In re Bailey,* 249 Pac. 29, 30, la Corte Suprema de Arizona dice:

''. . . La Legislatura puede, y muy propiamente lo hace, disponer de tiempo en tiempo que el ciudadano que interese solicitar de los tribunales permiso para postular ante ellos, llene ciertos requisitos mínimos, y las cortes han de exigir que todos los aspirantes cumplan el estatuto. Eso, sin embargo, constituye una restricción, no sobre los tribunales, sino sobre el individuo, y en forma alguna puede interpretarse como que obliga a las cortes a aceptar como funcionarios suyos a todos aquellos aspirantes que hayan llenado esos requisitos mínimos, a menos que se convenzan de que tales requisitos son suficientes. Si no lo son, es su derecho inherente prescribir todas aquellas otras condiciones adicionales que sean necesarias para dejarlas satisfechas de que los aspirantes en realidad tienen derecho a ser tales funcionarios. En otras palabras, ellas pueden, no aceptar menos, sino exigir más, de lo que la Legislatura ha requerido.''

Véanse además 6 C.J. 572, sección 16; *Brydonjack* v. *State Bar,* 208 Cal. Rep. 439; y *Ex parte Boneta,* 39 D.P.R. 154.

En el caso últimamente citado puede hallarse una reseña de las reglas generales hasta ahora prescritas por la Legis-

latura insular respecto a los requisitos que deben reunir los aspirantes al ejercicio de la abogacía.

En el caso de Urrutia, la resolución conjunta facultándolo a tomar, y a la Corte Suprema a concederle, un examen, dispone expresamente que presente prueba de su graduación de la Chicago School of Law y de otras materias contenidas en el preámbulo de dicha resolución. El hecho de que tal prueba sea una condición previa a la concesión de un examen indica claramente la intención por parte de la Legislatura de consignar meramente su parecer de que los hechos expresados en el preámbulo son suficientes, al ser establecidos mediante prueba, para justificar a esta corte a considerar el presente caso como una excepción a las reglas generales prescritas por disposiciones legislativas anteriores. La resolución número 69 no es tan clara, pero da margen a una interpretación similar. Toda vez que ambas resoluciones, así interpretadas, dejan la determinación final del asunto a la sana discreción de esta corte, ninguna de ellas debe considerarse como una intrusión en las facultades y poderes inherentes de la judicatura.

La contención de que ambas resoluciones son inconstitucionales porque equivalen a negar la igual protección de las leyes a futuros candidatos a examen no ha sido desarrollada adecuadamente en los alegatos de los opositores. Sin perjuicio de una consideración ulterior del asunto, si es que surge la cuestión en un caso futuro, bastará decir que por las razones ya apuntadas ni una ni otra de las dos resoluciones niega a ningún futuro aspirante situado en un plano similar el privilegio de solicitar su exención, a causa de circunstancias extraordinarias y excepcionales, de la legislatura o de esta corte.

Urrutia, por lo menos, es un graduado de escuela superior, con notas excelentes. Debido a su experiencia como márshal de una corte de distrito durante un período de ocho años, ha tenido oportunidad de aprender algo prácticamente

sobre materia procesal. Si se ha aprovechado de esta oportunidad, y si ha sido tan diligente en el estudio del derecho como parece haberlo sido en sus estudios de escuela superior, un examen minucioso podría demostrarlo.

El caso de Escalera, tal cual se encuentra actualmente, es algo más dudoso, pero una debida deferencia a la actuación de la legislatura demanda que no se le niegue la oportunidad de demostrar, si puede, que se debe hacer a su favor una excepción a la regla general. Quizá las declaraciones del aspirante mismo y de los abogados en ejercicio a que él hace referencia podrían arrojar alguna luz sobre la naturaleza y alcance de su experiencia actual en relación con cuestiones legales.

A fin de que este tribunal sea más ampliamente informado de los hechos invocados como suficientes para excluir estos dos casos de la regla general, se señalará un día para una vista en la que se permitirá a los peticionarios que ofrezcan cualesquiera declaraciones o prueba adicional que deseen. Y se dará a los opositores la oportunidad de repreguntar a los testigos que ocupen la silla testifical. Durante la vista, cualquiera de los peticionarios puede, si le parece conveniente, dirigir su propio caso. Cada uno de ellos deberá comprender claramente que le incumbe la tarea de establecer un caso excepcional y meritorio. Cada cual deberá estar preparado, en caso de que se le admita a examen, para convencer a la junta examinadora, como resultado de un examen más cabal que de ordinario, de que su capacidad mental y su conocimiento del derecho son más que suficientes para neutralizar la falta de preparación académica y del roce intelectual que se tiene en el salón de clases de una escuela acreditada de derecho.

En lo que atañe a la cuestión constitucional, se desestima la objeción.