Ex parte Ernesto Jiménez Sanjurjo, peticionario.

Núm. 3.—*Sometido:* Mayo 30, 1939. *Resuelto:* Junio 8, 1939.

*E. Jiménez Sanjurjo,* por su propio derecho.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

En su solicitud de mayo 25, 1939, que es idéntica a otras 38 solicitudes pendientes de resolución, el peticionario Ernesto Jiménez Sanjurjo alega que el día 24 del mismo mes y año recibió su diploma de abogado de la Universidad de Puerto Rico, después de haber asistido personalmente a las clases de derecho en dicha institución, y solicita que de

acuerdo con las disposiciones de la Ley núm. 1 de marzo 21, 1933, se le admita por este Tribunal Supremo al ejercicio de la abogacía sin examen.

 La admisión de una persona al ejercicio de la abogacía es una función de carácter puramente judicial. Entre las facultades inherentes a la rama judicial de nuestro Gobierno está la de determinar los requisitos que deberán cumplir y las cualidades que deberán reunir los solicitantes de una licencia para ejercer como abogados ante sus tribunales. Y es uno de sus principales deberes el de proteger a los tribunales y a la comunidad, negándose a admitir a aquellos que no posean suficientes conocimientos y a los que no gocen de una reputación moral intachable. Es indispensable para la administración de justicia y para la correcta interpretación de las leyes, que los abogados que postulen ante los tribunales, de los cuales son oficiales, sean hombres hábiles, ilustrados y de un carácter moral a toda prueba.

En el caso de *People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465, el ilustre Juez Cardozo, hablando por la Corte de Apelaciones de New York, dijo:

"Ser miembro del Colegio de Abogados es un privilegio cargado de condiciones. El apelante fué admitido al seno de esa antigua asociación para algo más que el lucro personal. Se convirtió en un funcionario de la corte y, al igual que la corte misma, en un instrumento o agencia para propulsar los fines de la justicia."

En *Ex parte Secombe,* 19 How. 9, 13, la Corte Suprema Federal se expresó así:

"Ha quedado bien sentado, por las reglas y la práctica de las cortes del derecho común, que sobre la corte recae la responsabilidad de determinar quién está calificado para convertirse en uno de sus oficiales, como abogado y consejero, y las causas por las cuales puede ser removido."

En la opinión emitida en abril 20, 1932, por los Jueces de la Corte Suprema Judicial de Massachusetts, al Senado de dicho Estado, en relación con un proyecto de ley para regu-

lar la corrección de contestaciones en exámenes de reválida, que tendía a limitar los poderes de dicha corte en cuanto a la admisión al ejercicio de la abogacía, se dijo:

"No existe nada en la constitución, ni expresa ni tácitamente, que indique una intención de que la facultad de la Judicatura sobre la admisión de abogados esté sujeta al control legislativo. La concesión de competencia legislativa a la Legislatura está en lenguaje amplio. . . No incluye el poder de pasar por encima de la rama judicial del gobierno en cuanto a las cualidades que deberán reunir aquellos que han de ser admitidos al ejercicio de la abogacía.

" . . . . . . . . . . .

"Ningún estatuto puede controlar al departamento judicial en el cumplimiento de su deber de decidir quiénes podrán gozar del privilegio de ejercer la abogacía.

"Estatutos referentes a la admisión a la abogacía, que proporcionan una instrumentalidad adecuada para la determinación de las cualidades de los candidatos, no constituyen una intromisión en el departamento judicial. Son convenientes, aun cuando no esenciales, para ayudar al departamento judicial a cumplir debidamente su obligación. . . Estatutos de esa naturaleza son válidos siempre que no infrinjan el derecho del departamento judicial a determinar quién podrá ejercitar el privilegio de postular ante las cortes y bajo qué circunstancias y de fijar las cualidades que deberán reunir las personas que deseen ser admitidas para tal fin. *Cuándo y hasta dónde los estatutos especifican cualidades y conocimientos, serán considerados como que fijan el mínimum y no como determinantes de los límites más allá de los cuales el departamento judicial no podrá pasar.* Esas especificaciones serán consideradas como limitaciones impuestas no al departamento judicial y sí a los individuos que solicitan admisión a la abogacía. No existe poder alguno en la Legislatura para obligar al departamento judicial a admitir como abogados a aquellos que dicho departamento considere impreparados para gozar de las prerrogativas y cumplir los deberes de un abogado.

" . . . . . . . . . . .

"Estas conclusiones están de acuerdo con principios declarados en substancia por la gran mayoría de las cortes en este país." (Citas.) 279 Mass. (Supplement) 607.

Esta Corte Suprema ya se había expresado en términos parecidos a los que acabamos de transcribir, en *Boneta, Ex*

*parte,* 39 D.P.R. 154, 160, y *Ex parte Urrutia,* 43 D.P.R. 168 y 916. En el primero de dichos casos el tribunal por voz del Juez Sr. Texidor se expresó así:

"Del precedente estudio obtenemos el convencimiento de que la facultad de admisión de aspirantes al ejercicio de la abogacía, es más de poder judicial que de ningún otro poder. Indudablemente, si los abogados son funcionarios de los tribunales, y tienen en ellos y ante ellos la misión de auxiliar la administración de justicia, si ellos co-operan con los tribunales en el ejercicio de un poder tan sagrado, y si ellos se encuentran, por virtud de las disposiciones de la ley, fundada en la práctica sana, justa, lógica y constante, bajo la inspección de esos mismos tribunales, a éstos, antes que a ningún otro poder, corresponde la facultad de admitir o no a los que pretenden ser sus auxiliares y cooperadores en la más alta misión que puede encomendarse a un hombre o a un conjunto de hombres."

De acuerdo con la jurisprudencia citada debemos resolver que las disposiciones de la sección 1 de la Ley núm. 1 de marzo 21 de 1933, invocadas por el peticionario como base de su alegado derecho a ser admitido sin examen, constituyen condiciones mínimas fijadas por el poder legislativo, que en nada obligan a esta Corte Suprema, la cual conserva intacta su facultad inherente y estatutaria de fijar las condiciones y requisitos que deberán cumplirse por todo solicitante de una licencia de abogado.

En el caso de *Ex parte Luis Ramos,* decidido en junio 24, 1938, 53 D.P.R. 372, este tribunal, inspirado por el deseo de levantar el *standard* y el prestigio de la abogacía en Puerto Rico, adoptó como regla la de que ninguna persona será admitida a examen de reválida si no es poseedora de un título de abogado expedídole por una universidad o colegio de derecho que haya sido clasificado como "A" por el Consejo de Educación Legal de la American Bar Association.

Entre las normas (*standards*) de la American Bar Association, redactadas por el eminente estadista Elihu Root, figura la siguiente:

"(2) La American Bar Association es de opinión que la graduación en un colegio de leyes no debe conferir el derecho a ser admi-

tido al ejercicio de la abogacía, y que todo candidato debe ser some-
tido a un examen por la autoridad pública con el fin de determinar
su capacidad.''

En consonancia con las normas por ella fijadas, la Amer-
ican Bar Association ha rehusado clasificar como ''A'' las
escuelas de derecho cuyos graduados son admitidos al ejer-
cicio de la profesión legal sin examen de reválida, por enten-
der que el examen ante una comisión examinadora oficial e
imparcial es el medio más práctico para poder determinar si
la escuela que solicita ser clasificada con la letra ''A'' está
cumpliendo su misión de preparar debidamente a sus educan-
dos para las altas responsabilidades que conlleva el ejercicio
de la abogacía.

Es altamente deseable que la Escuela de Derecho de la
Universidad de Puerto Rico reciba cuanto antes de la Amer-
ican Bar Association la clasificación ''A'', y de que sea así
elevada al mismo nivel de las escuelas de derecho de las prin-
cipales universidades continentales. Esa clasificación no po-
drá obtenerse mientras los graduados de dicha institución
continúen gozando del injustificado privilegio de ser admiti-
dos a postular sin previo examen de reválida. Y decimos que
el privilegio es injustificado, porque no vemos razón alguna
para que a los graduados de universidades clasificadas como
''A'', que requieren para poder matricularse en ellas la po-
sesión de un título universitario, se les exija someterse a un
examen, y a los graduados de nuestra universidad se les ad-
mita sin tal requisito.

Ninguna persona, ya sea un estudiante o un graduado
de la Universidad de Puerto Rico, tiene como ''derecho ad-
quirido'' el de ser admitido al ejercicio de la abogacía sin
previo examen. Es ése un privilegio o concesión especial, re-
vocable a voluntad de esta Corte Suprema, la que está facul-
tada para exigir a cualquier solicitante de licencia que de-
muestre mediante el correspondiente examen su capacidad y
su preparación para el ejercicio de la abogacía.

No vemos en realidad cómo un candidato que se considere intelectual y académicamente preparado para asumir las responsabilidades que impone el ejercicio de la abogacía, pueda tener objeción a que se le someta a un examen. Por el contrario, creemos que el candidato que obtenga su licencia después de pasar con éxito el examen de reválida, se sentirá más orgulloso de su título, tendrá mayor confianza en sí mismo y ofrecerá mayor garantía a las personas que deseen encomendarle la defensa de sus intereses.

*Por las razones expuestas y considerando que al hacerlo así ayudamos en cuanto nos es posible a levantar el buen nombre y prestigio de nuestra Universidad y de sus graduados, opinamos que debe declararse sin lugar la solicitud del peticionario para que se le admita sin examen, y dictarse una resolución para que el peticionario sea sometido, si así lo deseare, a examen durante el próximo mes de noviembre, en el día, a la hora y bajo las condiciones que este tribunal fijará oportunamente.*