*In re* JOSÉ MARIANO RÍOS.

*Número:* O-79-147     *Resuelto:* 30 de marzo de 1982

*Héctor A. Colón Cruz, Procurador General,* y *Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *José Raúl Cancio* y *Gilberto Mayo Aguayo,* abogados del querellado.

PER CURIAM: Por sintetizar adecuadamente la naturaleza de los cargos y trámites de la querella sobre conducta profesional formulada contra el abogado-notario José Mariano Ríos, reproducimos la introducción del Informe del Comisionado Especial (Juez Superior) Domingo Raffucci:

Tres son los cargos imputados por el Hon. Procurador General al querellado, licenciado José Mariano Ríos mediante querella de 3 de abril de 1979, según resultó enmendada por su escrito de 23 de enero de 1980, a saber: (1) haber

instigado a una serie de personas a perjurio al presentarles una serie de declaraciones juradas y autenticadas ante él, conteniendo testimonios distintos a los que esas personas habían prestado previamente ante un funcionario de la Oficina del Contralor, exponiendo hechos que no eran verdad y haciendo imputaciones viciosas contra ese funcionario; (2) haber ofrecido la declaración jurada del testigo Pedro Rivera Rivera, prestada ante el querellado y en la cual el primero legitima una gestión que realizó el querellado en compañía del declarante; y como éste, Rivera Rivera, era para la época en que realiza las gestiones, Ayudante Especial del querellado y empleado del Senado de Puerto Rico, cuyo sueldo se paga con fondos públicos, los servicios así prestados por el querellado en su carácter de abogado, acusan una violación del Artículo 201 del Código Penal (32 LPRA, Sección 4352) y (3) que el abogado querellado por ser también Senador, incurrió en conducta impropia e inmoral por representar al Alcalde del Municipio de Cidra ya que la Oficina del Contralor es un brazo del Poder Legislativo, existe una comisión conjunta legislativa, presidida por un Senador en la cual se examinan y evalúan los Informes del Contralor.

Después de diversos incidentes procesales y la celebración de la conferencia con antelación al juicio celebrada el día 17 de marzo de 1980, se celebró la vista en su fondo en los días 17 y 18 de marzo de 1980. [Escolio omitido.]

Ambas partes tuvieron la oportunidad de presentar y contrainterrogar testigos y de presentar la evidencia documental en apoyo a sus respectivas posiciones.

La Oficina del Procurador General presentó evidencia directa en relación con el primer cargo y sometió el segundo y el tercero sobre la base de la prueba total presentada, incluyendo el testimonio del querellado y de los testigos presentados por éste.

En virtud de la prueba testifical y documental, el Comisionado formuló las siguientes determinaciones de hecho:

1— El querellado José Mariano Ríos, es abogado y notario habiendo sido admitido al ejercicio de dichas profesiones el

día 4 de diciembre de 1959 y 11 de mayo de 1960, respectivamente.

2— El querellado es Senador por el Distrito Senatorial de Guayama y lo era para la fecha de los hechos relacionados con el caso.

3— En su carácter de abogado del señor Tomás Rodríguez, Alcalde del Municipio de Cidra, el querellado, junto a otras personas, preparó una réplica al informe preliminar del Contralor, Informe de Investigación Número M-77-15, que comprende el período de 13 de octubre de 1971 al 2 de septiembre de 1975. El querellado, junto a las mismas personas realizó una investigación y estudio habiendo tomado declaraciones juradas a diversas personas, a saber: Pablo Emilio Berríos, José Antonio Flores Garced y Abelardo Hernández Figueroa. Estas personas habían prestado declaración ante el funcionario de la Oficina del Contralor, señor Natividad Vázquez. El querellado tomó otra declaración jurada al señor Pedro Rivera Rivera. Preparó además una declaración a ser jurada por el señor William Ramos Vicente la cual no fué suscrita por éste. El querellado cobró al Alcalde Rodríguez por sus servicios profesionales.

4— Al preparar las declaraciones juradas, el querellado tomó notas en una libreta de apuntes, utilizando éstas para dictarle las declaraciones a la señora Nannette López Ortiz, Secretaria del Municipio, quien prestó sus servicios fuera de horas laborables y recibió compensación pagada de su propio peculio por el Alcalde Rodríguez.

5— Al tomarle juramento a las personas que prestaron las declaraciones, el querellado les dió a leer o les leyó las mismas.

6— De la prueba presentada y admitida, no surge actuación alguna del querellado para conseguir que los declarantes cambiaran la declaración que habían prestado ante el funcionario del Contralor, Natividad Vázquez, cuando realizaba la intervención de cuentas del Municipio de Cidra. Tampoco se desprende actuación que demuestre que el querellado instó a perjurio a ninguno de los declarantes, aún cuando las declaraciones prestadas ante éste varían en algunos extremos las prestadas ante el funcionario de la Oficina del Contralor. El querellado no conoció el contenido

de las declaraciones prestadas al funcionario de la Oficina del Contralor hasta que las mismas fueron obtenidas por sus abogados después del comienzo del presente procedimiento.

7— Al concluir en la forma en que lo hacemos, no damos crédito a los testimonios de los señores Berríos y Flores Garced por la forma y contenido de sus declaraciones ante el suscribiente, la inconsistencia y contradicción de sus testimonios y por sus admisiones en sus declaraciones ante el querellado y los fiscales del Departamento de Justicia. Su testimonio fué vacilante, monosilábico y en el caso del testigo Flores Garced claramente interesado.

8— En lo relativo a las declaraciones juradas diversas y contradictorias prestadas por el señor [Abelardo] Hernández Figueroa ante el funcionario de la Oficina del Contralor, el querellado, los fiscales, la Comisión de Querellas Municipales, es forzoso concluir que en ocasión de la vista del presente caso Hernández Figueroa declaró en forma idéntica a la forma en que lo hizo al declarar ante el querellado. Admitió que en la primera conversación con el querellado el día 5 de junio de 1973 le dió información sobre cierto equipo de su propiedad, ofreciéndole inclusive datos sobre modelos y números de serie, los cuales ofreció al querellado con vista a sus archivos, informándole además que había hecho negocios en el 1971 con la cantera de Don Tomás Rodríguez cuando éste no era Alcalde de Cidra; que hacía tales transacciones con Doña Manuela Navarro, esposa de Rodríguez; que éste le prestaba equipo al Municipio de Cidra gratuitamente; que en ocasión de la investigación del Contralor, el funcionario de esa oficina le habló de que tendría que devolver el importe de los pagos que había recibido del Municipio de Cidra; que podía ir a la cárcel y que todo eso lo tenía nervioso y tenso. Al comparar la declaración del señor Hernández Figueroa durante la vista del caso con la declaración que prestó ante el querellado es necesario concluir que el querellado se ajustó en la redacción de la declaración a los datos que el señor Hernández Figueroa le había suministrado. Hemos tomado en consideración el testimonio del señor Raúl Colón Rodríguez, quien fuera empleado de la Oficina del Contralor por quince (15) años, en la División de Municipios, llegando a ser Supervisor de Auditores, y que a la fecha de los hechos del presente caso,

era asesor en materia de finanzas de varios municipios, entre ellos el Municipio de Cidra. El día domingo 5 de junio de 1977, Colón Rodríguez acompañó al querellado a visitar a Abelardo Hernández Figueroa. Este testigo tomó notas o apuntes de las manifestaciones e información ofrecida por Hernández Figueroa. (Exhibit "B" del Querellado.) Al examinar los apuntes originales nos percatamos de que los mismos son sustancialmente iguales a la declaración que juró Hernández Figueroa ante el querellado. Hernández Figueroa firmó la declaración el día 11 de junio de 1977 en horas de la madrugada en ocasión de la visita que le hiciera el querellado a Hernández Figueroa, acompañado de Colón Rodríguez y Noel Cedeño Muñoz, quienes llegaron a su residencia en horas de la noche extendiéndose la visita hasta las primeras horas del día 11 de junio. Noel Cedeño Muñoz, a la fecha de los hechos del presente caso y al momento de su comparecencia ante nosotros era profesor de instrucción pública en Santa Isabel y poseía una maestría en Administración Escolar.

9— En relación con las alegaciones del cargo número dos (2) determinamos que la prueba ha establecido que el señor Pedro Rivera Rivera era Ayudante Especial del querellado, siendo empleado del Senado de Puerto Rico; que acompañó al querellado a visitar a algunas de las personas que prestaron declaraciones juradas ante el querellado y que a su vez prestó una declaración jurada ante él en relación con un incidente con el señor William Ramos Vicente. La prueba también demuestra que las diligencias hechas por el señor Rivera Rivera, lo fueron fuera de horas laborables, unas veces por la tarde y otras en días libres; nada hay en la prueba que demuestre que el señor Rivera Rivera trabajare para el querellado en su calidad de abogado durante horas laborables. Tampoco hubo prueba de cuáles son las horas laborales en el Senado de Puerto Rico, donde es sabido que, por la forma y clase de trabajo, ordinariamente el horario es flexible.

10— En relación con el cargo número tres (3) quedó establecido por la prueba, como ya antes se ha dicho, que el querellado es Senador por el Distrito de Guayama, y que rindió servicios profesionales prestados y pagados por el señor Tomás Rodríguez, quedando de igual modo establecido

que el Alcalde pagó los servicios con su propio y particular dinero. Los servicios no fueron rendidos al Alcalde en su carácter oficial ni fueron compensados por el Municipio de Cidra.

11— La Oficina del Contralor rinde a la Asamblea Legislativa copia de sus informes de intervención, los cuales se someten a una comisión conjunta, presidida por un Senador. Los informes así rendidos son aquellos que resulten finales. El querellado, al rendir sus servicios profesionales lo que tuvo ante sí fué el informe preliminar que prepara la Oficina del Contralor y somete a la consideración del Alcalde para su información y comentarios. No hay prueba de que el querellado, en su carácter de Senador, tuviera acceso a información alguna de la Oficina del Contralor que hubiera sido sometida a la consideración del Senado.

Tomando como base las anteriores determinaciones fácticas formuló las siguientes recomendaciones:

1— Se estima no probado el cargo número uno.

2— Se estima no probado el cargo número dos.

3— Se estima que el cargo número tres constituye una conclusión normativa de ética y de derecho a nuestro juicio resuelta y pautada por el Hon. Tribunal Supremo en el caso *In Re Rodríguez Torres*, 106 DPR 698 (1978).

4— Se recomienda en consecuencia el archivo de la querella de epígrafe y la exoneración del querellado.

I

Previa transcripción de la evidencia documental concedimos término a las partes para exponer sus comentarios al referido informe y éstas oportunamente lo hicieron.

El Procurador General, en síntesis, argumenta que ". . . de los testimonios vertidos por los testigos ofrecidos por la parte querellada, señalamos en general que nada aportaron a su favor: algunos por demasiado interés en relación con el querellado o con el alcalde y otros simplemente por lo inocuo de sus testimonios"; que erró el Comisionado al no

darle crédito a sus testigos; y que la conducta del querellado Mariano Ríos ". . . en su carácter de representante legal del alcalde del Municipio intervenido, Cidra, quien a su vez es parte integrante del Poder Legislativo por ser Senador, realizó gestiones en beneficio de aquél en su capacidad dual como abogado-Senador y como conocedor del Derecho. Dada la naturaleza del caso, dicha conducta inmoral, apunta una práctica indeseable y antiética", que resulta incompatible con sus funciones de Senador de evaluar en su oportunidad los informes y la labor del Contralor de Puerto Rico.

Por su parte, el querellado Mariano Ríos aduce que el Comisionado aquilató correctamente la credibilidad de los testigos y que la prueba del Procurador resultó insuficiente. Sobre el cargo número tres señala que "el Procurador General no presentó prueba específica alguna, sometido sobre la base de toda la prueba, incluyendo la presentada por el Querellado, imputa que el abogado querellado, por ser también Senador, incurrió en conducta impropia e inmoral por representar al Alcalde del Municipio de Cidra y ser la oficina del Contralor un brazo del Poder Legislativo y existir una Comisión Conjunta Legislativa presidida por un Senador en la cual se examinan y evalúan los informes del Contralor. *Sobre este cargo deseamos comentar que no hay ninguna regla de ética profesional ni de ética legislativa que prohiba la actuación del Querellado. Esto es, no se prohibe que un abogado que es Senador represente, en su carácter personal y particular a un Alcalde o algún otro funcionario público. Obsérvese además que la prueba practicada no demuestra que el Querellado haya obtenido información alguna en su carácter de Senador ni dentro ni fuera del Senado que le facilitare el representar al Alcalde.* Véase *In Re: Rodríguez Torres*, 106 DPR 698 (1978)". (Énfasis suplido.)

## II

█ El examen integral de la evidencia documental y testifical nos mueve a sostener las determinaciones de hecho del Comisionado con referencia a los dos primeros cargos, a saber, haber instigado a perjurio a varios testigos y violado la fe notarial. Correspondía al Comisionado dirimir la credibilidad de los testigos y ponderar el alcance de las declaraciones y circunstancias en que las mismas fueron obtenidas. No habremos de intervenir con dicha posición al no habérsenos persuadido de que se cometiera error manifiesto o se incurriera en prejuicio, pasión o parcialidad.

Ahora bien, distinto resultado se impone en cuanto a la impropiedad del querellado Mariano Ríos de que siendo senador, actuara como abogado del Alcalde del Municipio de Cidra para impugnar y cuestionar las labores investigativas del Contralor de Puerto Rico. Nos explicamos.

El Art. III, Sec. 22 de la Constitución del Estado Libre Asociado crea el puesto de Contralor a ser nombrado por el Gobernador con el consejo y consentimiento de la mayoría del número total de los miembros que componen cada Cámara con la encomienda de fiscalizar y determinar la legalidad de todos los ingresos, cuentas y desembolsos del Estado, de sus agencias e instrumentalidades y de los *municipios* y rendir anualmente los informes, inclusive los especiales que le sean requeridos por la Legislatura o el Gobernador. Se le faculta expresamente con "amplios poderes para que realice sin entorpecimientos las investigaciones que crea necesarias". *Diario de Sesiones de la Convención Constituyente*, 1961, pág. 2588.

█ En virtud de esta concepción y mandato constitucional, es evidente concluir que la Oficina del Contralor es el instrumento del Poder Legislativo responsable de fiscalizar y comprobar que los fondos públicos sean desembolsados según la ley y reglamentos vigentes y los princi-

pios de una sana administración pública fiscal. La ley habilitadora de la Oficina del Contralor —Núm. 9 de 25 de julio de 1952— en su Art. 12 reafirma estos principios al disponer:

El Contralor rendirá informes especiales a la Asamblea Legislativa y al Gobernador sobre las cuentas, los desembolsos y los ingresos de las agencias, instrumentalidades y subdivisiones políticas en relación con los cuales se descubran irregularidades o violaciones de ley. 2 L.P.R.A. sec. 82.

Tomamos conocimiento judicial de que la Asamblea Legislativa ha establecido una Comisión Conjunta con la misión de evaluar los informes del Contralor, formular recomendaciones, y si es menester, aprobar legislación tendente a remediar los males y abusos detectados por el Contralor en el uso de fondos públicos. No podemos, por tanto, refrendar como norma ética saludable que un legislador, que es también abogado, intervenga y actúe representando intereses en pugna o conflicto con investigaciones oficiales e informes —preliminares o finales— del carácter que nos ocupa. Ello tiende a debilitar el desempeño fiel de ambos funcionarios —contralor y legislador— y a desmerecer la seriedad y sana administración pública que informa tan altas encomiendas.(¹)

▬▬ Al legislador que también es abogado le aplican unas limitaciones y dimensiones éticas adicionales distintas a quienes no poseen o ejercen aquella profesión. Como abogados que "se sientan en la Legislatura, son también funcionarios de est[e Tribunal]". *Claudio* v. *Ortiz*, 29 D.P.R. 435, 443 (1921). Como tales, están obligados por las normas éticas que este Tribunal —fundado en el poder

---

(¹) No se escapa el argumento de que el legislador-abogado podría salvar esta incompatibilidad inhibiéndose de intervenir o votar en el asunto respecto al que representó. La dificultad de ello radica en que la primera lealtad de él es con la Rama Legislativa, y segundo —dado al gran número de informes que rinde el Contralor— la difusión y generalización de esta práctica podría afectar seriamente las labores legislativas de evaluación.

inherente de reglamentar la profesión— viene obligado a exponer. Aunque el mandato electivo no es irreconciliable *per se* con el ejercicio de la abogacía, hay instancias como la presente en que existe una incompatibilidad entre ese ejercicio y el desempeño de la función legislativa.

A tal efecto, el Canon Núm. 6 reza:

*Canon 6.—Conducta Ante Agencias Gubernamentales*

Al prestar sus servicios profesionales ante organismos legislativos o administrativos el abogado debe observar los mismos principios de ética profesional que exige su comportamiento ante los tribunales. Es impropio de un abogado ocultar su gestión profesional ante dichas agencias gubernamentales mediante el empleo de terceros o de medios indirectos para promover determinada acción gubernamental en interés de su cliente. Un abogado que ejerza su profesión y que además ocupe un cargo legislativo o gubernamental debe anteponer el interés público al de su cliente cuando ambos vengan en conflicto e inmediatamente renunciar la representación del cliente.

El potencial conflicto de interés que sirve de premisa para esta decisión está contemplado en el espíritu del citado Canon 6, que *in fine* exige la inmediata renuncia de un abogado-legislador por ser su deber "anteponer el interés público al de su cliente". *Código de Ética Profesional*, 99 D.P.R. 1002, 1006 (1970).

En consecuencia, resolvemos que existe incompatibilidad ética para un abogado, que es también legislador, al intervenir, defender, actuar y prestar sus servicios como abogado, sean o no remunerados, en los trámites, asuntos y casos en que un funcionario público es objeto de investigación —preliminar o final— por la Oficina del Contralor de Puerto Rico. Al aplicar estos principios al caso de autos, resolvemos que la gestión del querellado José Mariano Ríos como abogado en favor del Alcalde, frente al Contralor —siendo legislador— representó un choque de deberes y responsabilidades en ambas capaci-

dades. Mediante tal conducta incurrió en la falta de ética antes expuesta. Procede, pues, nuestra censura por tal actuación.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Martín está conforme y emitió voto separado. El Juez Asociado Señor Díaz Cruz emitió voto disidente. El Juez Asociado Señor Torres Rigual no intervino.

—O—

Voto separado del Juez Asociado Señor Martín.

En *In re Rodríguez Torres*, 106 D.P.R. 698 (1978), expresé que el Tribunal debió haber adoptado allí la norma ética que hiciere incompatible el ejercer la profesión de abogado a cualquier abogado que fuere miembro de la Asamblea Legislativa, cuyo ejercicio incluiría la postulación ante los tribunales de justicia, los organismos cuasi judiciales y las distintas agencias y corporaciones públicas. El Tribunal, sin embargo, rechazó allí la norma que propuse. Ni entonces ni ahora existe norma alguna que prohíba a un legislador que es abogado ejercer esta profesión. Creo, sin embargo, que se impone la redacción de un canon de ética que prohíba tal práctica.

El único canon de los de Ética Profesional que se dirige en cierto modo a la relación del legislador-abogado es el Núm. 6, que reza así:

*Canon 6.—Conducta Ante Agencias Gubernamentales*

Al prestar sus servicios profesionales ante organismos legislativos o administrativos el abogado debe observar los mismos principios de ética profesional que exige su comportamiento ante los tribunales. Es impropio de un abogado ocultar su gestión profesional ante dichas agencias gubernamentales mediante el empleo de terceros o de medios indirectos para promover determinada acción gubernamental en interés de su cliente. Un abogado que ejerza su profesión y que además ocupe un cargo legislativo o gubernamental debe anteponer el interés público al de su cliente

cuando ambos vengan en conflicto e inmediatamente renunciar la representación del cliente.

El citado canon 6 está comprendido dentro de la sección relativa a los deberes del abogado para con la sociedad, que requiere de todo abogado que "como ciudadano y en su capacidad profesional, ya sea como juez, fiscal, abogado postulante, asesor o en cualquier otro carácter, actúe siempre de acuerdo al ideal expresado en el preámbulo de estos cánones".

Los propios términos del canon 6, en su última oración, reconocen que un abogado que ocupe un cargo legislativo puede ejercer su profesión de abogado, pero le imponen la limitación ética de que "debe anteponer el interés público al de su cliente cuando ambos vengan en conflicto e inmediatamente renunciar la representación del cliente".

Señala, pues, el canon 6 que el abogado que ocupa un cargo legislativo debe abstenerse de representar a un cliente ante la existencia de conflicto de intereses entre su representado y el interés público. Evidentemente el legislador querellado, al asumir la representación del Alcalde en un asunto de vital interés público que envolvía unas irregularidades señaladas por el Contralor de Puerto Rico, no ejerció la prudencia que aconseja la ética judicial. Por ello debe ser censurado, y apercibido de futuras violaciones a los preceptos del Código de Ética Profesional.

Aprovecho la situación que origina este caso para insistir en mi posición sobre la norma ética de incompatibilidad que propuse en *In re Rodríguez Torres*, supra, pues entiendo hoy más que nunca que este Tribunal, conforme a su poder inherente de reglamentar la conducta ética de los abogados,(1) debe, sin más dilación, regla-

---

(1) *Coll* v. *Leake, Juez de Distrito,* 17 D.P.R. 857 (1911); *In Re Tormes,* 30 D.P.R. 267 (1922); *In Re Casablanca,* 30 D.P.R. 399 (1922); *Boneta Ex Parte,* 39 D.P.R. 154 (1929); *Ex Parte Urrutia,* 43 D.P.R. 168 (1932); *Ex Parte Jiménez,* 55 D.P.R. 54 (1939); *Guerrero* v. *Tribunal de Apelación,* 60 D.P.R. 241 (1942); *In Re Bosch,* 65 D.P.R. 248 (1945); *In Re González Blanes,* 65 D.P.R. 381 (1945); *In Re Abella,* 67 D.P.R. 229 (1947); *In Re Pagán,* 71 D.P.R. 761 (1950); *In re Liceaga,* 82 D.P.R. 252 (1961).

mentar también la conducta de abogados que a su vez son legisladores, en relación con el ejercicio de la profesión de abogado.

Me permito reiterar algunas de las expresiones contenidas en mi disidencia en el referido caso, por entender que cobran vigencia ante los hechos expuestos en la querella de este caso.

El abogado que es a la vez legislador es depositario de la confianza de los ciudadanos en su dedicación para servir al interés público. Y, para conservar esa imagen, el abogado debe conducirse en tal forma que no haya duda que sus ejecutorias respondan a los más altos ideales y dentro de la mejor tradición de la profesión legal.

El abogado es parte esencialísima de la rama legislativa. En el pasado, y al presente, esa rama se ha nutrido de muchos abogados que han dejado su huella de honor, integridad y competencia en sus ejecutorias. Es necesario que continúe la ingerencia benéfica de abogados en la difícil y delicada tarea de ir dando forma al desarrollo de los programas sociales, económicos, de educación, de salud y de recreo y el mejoramiento de la calidad de la vida puertorriqueña. Solamente aquellos que sienten un compromiso con su pueblo y sus congéneres deben ser los atraídos a esa función ciudadana. Los sacrificios personales envueltos están más que compensados por la satisfacción derivada de servir a sus conciudadanos. Por ello es mi firme creencia que una norma de ética como la que propongo para los abogados legisladores no alejará a los abogados de talento, integridad y dedicación de la encomiable y envidiable misión de servir.

Su misión como legislador es promover la legislación que redunde en el mayor beneficio para el pueblo. En su función como legislador interviene en la formulación de política pública y por ello merece el respeto de sus conciudadanos. Por otro lado, casi por definición, está abanderizado a un partido político. El poder que ejerce como político y como hombre público en ocasiones es ominoso. Su influencia se deja sentir en todos los órdenes, voluntaria en algunos casos e involuntaria en otros. Su mera presencia en cualquier actividad oficial es imponente. De esa realidad no podemos apartarnos.

La intervención de un abogado ante un tribunal de justicia o ante un organismo administrativo o cuasi judicial en representación de una de las partes lo aleja de su misión de legislador y lo envuelve en la lucha cotidiana de los ciudadanos por la defensa de sus pequeños o grandes intereses privados. Los intereses exclusivos de cada ciudadano particular muchas veces vienen en conflicto con los intereses públicos que el abogado viene obligado a defender en su delicada función de legislador y de hombre público. Su intervención necesariamente se hace sentir ante el funcionario de la rama judicial o de la rama ejecutiva cuyos nombramientos pueden haber sido objeto de su consideración en el pasado o pueden, a la expiración de sus cargos, volver a su consideración. Los presupuestos de los departamentos y agencias, así como las leyes que afectan favorablemente o desfavorablemente la gestión de los funcionarios públicos aludidos también son considerados por los abogados legisladores. Dadas esas circunstancias el abogado legislador no debe colocar a los funcionarios ejecutivos y judiciales en la posición en que deban decidir asuntos en que el abogado tiene un interés pecuniario, ya que al asumir la representación del cuidadano privado las más de las veces el abogado recibe algún tipo de compensación.

La preocupación por la intervención del abogado legislador en las disputas entre ciudadanos, pero en defensa de una de las partes, quiebra la confianza que en el proceso democrático tiene la parte adversa ya que de creer que su posición es la correcta, nadie puede convencerle, si es derrotado, que la mera presencia del abogado legislador no inclinó la balanza en su contra. Nada más intranquilizante para un litigante y para su abogado que el tener frente a sí como representante legal del adversario a un abogado legislador. Esa preocupación inevitable debe ser suficiente para que el abogado legislador se inhiba de participar contribuyendo así a que imperen en los procedimientos un clima de sosiego y de esperanza en la justicia que no se logra con su presencia. No creo necesario tener que abundar en este tema que ha sido objeto de amplios y constantes comentarios públicos a través de los años.

Más aún, el abogado legislador en la defensa de intereses privados no puede colocarse en la posición de tener que servir de orientador al tribunal en cuanto a la intención

legislativa al aprobar tal o cual legislación, siendo ése muchas veces factor esencial para la resolución de la controversia. (²) Ni tampoco debe estar ofreciendo a un tribunal, en beneficio de un ciudadano particular, su versión de cómo se debe interpretar una ley en particular. Su labor de hacedor de las leyes puede colocarle en una posición de ventaja aparente sin que necesariamente esté en lo correcto al hacer afirmaciones al respecto.

. . . . . . . .

En la función de oficiales del tribunal, de la cual no están excluidos los abogados por el hecho de ser legisladores, este Tribunal viene obligado a velar por que la imagen del abogado refleje las mejores tradiciones de la profesión legal. Uno de los más altos ideales, bajo nuestro sistema democrático, consiste en que la ley debe dispensar igual justicia a todos los hombres, ricos o pobres, influyentes o no influyentes, humildes o grandes. Esto es, preservar derechos iguales para todos sin que haya privilegios especiales para algunos. Acepto que esos ideales se tornan muchas veces en quiméricos, pero son ideales a los que debemos aspirar, aunque las complejidades e imperfecciones de la sociedad no siempre permitan que se realicen. Págs. 738–742.

Mi posición no llega al extremo de convertir al Tribunal en árbitro moral de la conducta de los legisladores en el desempeño de sus funciones legislativas. Mi preocupación está limitada a la conducta de los abogados que, bajo el manto protector de ser a la vez legisladores, puedan atentar contra la fe de un pueblo en la justicia.

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz.

Disiento de la expresión de censura contra el abogado-senador. Desde el año 1978 este Tribunal al revocar por mayoría una norma de incompatibilidad ética similar a la que ahora se propone, eligió un curso de abstención en la regulación de aquella práctica profesional que de algún

---

(²) Véase *N.C. Freed Co., Inc.* v. *Board of Governors of Fed. Res. Sys.*, 473 F.2d 1210, 1217, escolio 23 (1973).

modo interviniese con la inmunidad y libertad de acción del legislador. *In re Rodríguez Torres*, 106 D.P.R. 698 (1978). El querellado tiene la libertad de inhibirse si el caso llegase a la consideración del Senado. Él debe asumir la responsabilidad en cuanto a si su función pública de legislador se perjudica por su defensa de funcionarios investigados por el Contralor.