Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Juan López Morales | 2012 TSPR 46 <br><br> 184 DPR ____ |

Número del Caso: TS-5663

Fecha: 10 de enero de 2012

Oficina del Procurador General:

        Lcda. Zaira Z. Girón Anadón
        Subprocuradora General

Materia: Conducta Profesional- La suspensión será efectiva el 13 de marzo de 2012 fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Juan López Morales                    TS-5663

PER CURIAM

En San Juan, Puerto Rico, a 10 de enero de 2012.

La salud mental de los miembros que componen la profesión legal es de importancia trascendental no solo para este Tribunal, sino para la sociedad puertorriqueña. Esto es así porque tenemos la encomienda de asegurar que los abogados y abogadas que practican el Derecho en nuestra jurisdicción ejerzan sus funciones con la mayor diligencia y competencia. Un abogado que padece de sus facultades mentales, difícilmente podrá desempeñarse a la altura que exige el Código de Ética Profesional, 4 L.P.R.A., Ap. IX. Por esa razón es que nos vemos precisados en el día de hoy

a suspender preventivamente al Lcdo. Juan López Morales del ejercicio de la abogacía.

I

El Lcdo. Juan López Morales fue admitido al ejercicio de la abogacía el 31 de octubre de 1977 y al de la notaría el 17 de enero de 1978. Desde el 25 de junio de 1980 renunció voluntariamente al ejercicio de la notaría.

Este procedimiento surge luego de que el licenciado López Morales nos cursó una comunicación informándonos que se le presentó una querella ante el Colegio de Abogados del estado de Georgia donde estaba admitido a ejercer también la profesión legal. Nos indicó que como producto de esa querella, fue suspendido del ejercicio de la abogacía en esa jurisdicción. En su comunicación, nos señaló que de ser ciertas las determinaciones del Comisionado Especial de Georgia con relación a su capacidad mental, entonces tampoco estaría apto para ejercer la abogacía en Puerto Rico. Por tanto, nos solicitó que nombráramos un Comisionado Especial para que evaluara la prueba y realizara el informe correspondiente.

Luego de varios trámites procesales, el 27 de febrero de 2009 le ordenamos a la Oficina de la entonces Procuradora General que evaluara la prueba y emitiera su informe. Asimismo, le concedimos término al licenciado López Morales para que mostrara causa por la cual no debíamos suspenderlo indefinidamente de la práctica de la abogacía por motivo de la decisión del Tribunal Supremo

del estado de Georgia. El 21 de mayo de 2009 la Procuradora General emitió su informe.

Posteriormente, el licenciado López Morales compareció y explicó las circunstancias que dieron paso a su suspensión de la práctica de la abogacía en el estado de Georgia. Según narró el licenciado López Morales, la controversia en el estado de Georgia surgió luego que le solicitara al licenciado Ralph E. Hughes que cesara de su representación legal en un caso por daños y perjuicios que presentó en ese estado tras sufrir un accidente automovilístico.

Surge del expediente que luego de recibir sentencia a su favor en el caso de daños, el licenciado López Morales presentó el 5 de enero de 2004 una acción civil por violación a sus derechos civiles ante la Corte de Distrito de Estados Unidos para el Distrito Norte de Georgia al amparo de la Sección 1983 del Título 42 del United States Code, 42 U.S.C. sec. 1983. En su demanda, incluyó al juez estatal que dilucidó el caso de daños, a sus asistentes, a funcionarios de la secretaría, a varios jueces del Tribunal de Apelaciones de Georgia, al licenciado Hughes y al licenciado Rusell McClelland.

Esencialmente, en esa demanda el licenciado López Morales adujo que los demandados conspiraron en su contra con el objetivo de privarlo de su derecho a un debido proceso de ley y de sus derechos propietarios, al concederle honorarios a sus dos abogados por su representación en el pleito civil de daños. Añadió que los

demandados actuaron en común acuerdo y concertadamente para ocasionarle daños, oprimirlo, obstruirle, denegarle y privarle del libre disfrute de los derechos y privilegios garantizados por la Constitución y las leyes de Estados Unidos.

Por estas alegaciones, el licenciado Hughes presentó una querella contra el licenciado López Morales ante la Asociación de Abogados de Georgia ("State Bar of Georgia"). En síntesis, en la queja el licenciado Hughes le imputó al licenciado López Morales desconocimiento del sistema judicial del estado de Georgia y abuso del sistema para su lucro personal, lo que lo convertía en un peligro para el público. De igual forma, afirmó que las reclamaciones del licenciado López Morales pusieron una carga mayor al sistema al añadir innecesariamente volumen de trabajo a numerosos individuos y personal del tribunal.

El licenciado López Morales expuso que la queja presentada violaba su derecho constitucional al debido proceso de ley, por ser vaga e imprecisa. Además, señaló que la Regla 4-212(a) de la Asociación de Abogados ("State Bar of Georgia"),[1] violaba su derecho a no incriminarse

---

[1] "Rule 4-212. Answer of Respondent; Discovery

(a) The respondent shall serve his answer to the formal complaint of the State Bar within thirty days after service of the formal complaint. In the event that respondent fails to answer or to obtain an extension of time for his answer, the facts alleged and violations charged in the formal complaint shall be deemed admitted.
(continúa...)

mediante testimonio compelido conforme a la Quinta Enmienda de la Constitución de Estados Unidos. Asimismo, manifestó que la querella era producto de una persecución selectiva por razón de raza y por utilizar el derecho a la libre expresión que le garantiza la Primera Enmienda.

De otra parte, insistió en que la querella era un castigo cruel e inusitado pues la Asociación de Abogados del estado ("State Bar of Georgia") conocía que las Reglas de Procedimiento Civil federales no penalizaban por las inferencias y conclusiones que se hacen en las alegaciones de una demanda. Sostuvo que sus alegaciones e inferencias en contra de los funcionarios judiciales y abogados deben ser adjudicadas por un tribunal y que no fueron hechas con malicia. Manifestó que sus alegaciones eran producto de la conducta desplegada por los funcionarios demandados, quienes estaban sujetos al escrutinio público. Por eso, impugnó la inmunidad absoluta que disfrutan los jueces del estado de Georgia por sus decisiones judiciales, que entiende incompatible con el sistema constitucional de gobierno.

---

In the event the respondent's answer fails to address specifically the issues raised in the formal complaint, the facts alleged and violations charged in the formal complaint and not specifically addressed in the answer shall be deemed admitted. A respondent may obtain an extension of time not to exceed fifteen days to file the answer from the special master, or, when a challenge to the special master is pending, from the chairperson of the Review Panel. Extensions of time for the filing of an answer shall not be routinely granted".

Por último, aseguró que la licencia que le otorgó el estado de Georgia para practicar en esa jurisdicción era un derecho propietario protegido por las leyes y constituciones de Estados Unidos y del estado de Georgia. Cabe señalar que el 23 de enero de 2004 el licenciado López Morales desistió sin perjuicio de la demanda presentada en el foro federal.

Como resultado de la queja presentada por el licenciado Hughes, la Asociación de Abogados del estado ("State Bar of Georgia") determinó causa y presentó una querella formal ante el Tribunal Supremo de ese estado. En la querella, se le imputó al licenciado López Morales una infracción a la Regla 3.1(b)[2] y otra a la Regla 3.3 (a)(1)[3]

---

[2] "RULE 3.1 MERITORIOUS CLAIMS AND CONTENTIONS

In the representation of a client, a lawyer shall not:

**(a) file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure                                                                another;**

(b) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal            of            existing            law.

The maximum penalty for a violation of this Rule is a public reprimand".

[3] "RULE 3.3 CANDOR TOWARD THE TRIBUNAL

**(a) A lawyer shall not knowingly:**

**(1) make a false statement of material fact or law to a tribunal;**

(continúa...)

del Código de Conducta Profesional del estado de Georgia.
El primero de esos artículos prohíbe que un abogado, a
sabiendas, presente una reclamación o defensa prohibida
por ley ante los tribunales, a menos que pueda sostenerla
mediante argumentos de buena fe, que se inclinen a que se
puede extender, modificar o derogar la ley existente. La
segunda imputación es por hacer falsas aseveraciones al
tribunal.

Luego de varios trámites procesales, el licenciado
López Morales contestó la querella. En esta indicó que el
Comisionado Especial designado se tardó intencionalmente,

---

(2) fail to disclose a material fact to a tribunal when
disclosure is necessary to avoid assisting a criminal or
fraudulent        act        by        the        client;

(3) fail to disclose to the tribunal legal authority in
the controlling jurisdiction known to the lawyer to be
directly adverse to the position of the client and not
disclosed        by        opposing        counsel;        or

(4) offer evidence that the lawyer knows to be false. If a
lawyer has offered material evidence and comes to know of
its falsity, the lawyer shall take reasonable remedial
measures.

(b) The duties stated in paragraph (a) continue to the
conclusion of the proceeding, and apply even if compliance
requires disclosure of information otherwise protected by
Rule 1.6.
(c) A lawyer may refuse to offer evidence that the lawyer
reasonably        believes        is        false.

(d) In an ex parte proceeding, other than grand jury
proceedings, a lawyer shall inform the tribunal of all
material facts known to the lawyer that the lawyer
reasonably believes are necessary to enable the tribunal
to make an informed decision, whether or not the facts are
adverse.

The maximum penalty for a violation of this Rule is
disbarment".

dos años y cuatro meses en emitir las resoluciones en torno a su querella, pues todo era parte de una conspiración de su parte, ya que esperaba la finalización de una investigación que inició el Negociado Federal de Investigaciones en su contra por escribirle una carta al Secretario General de las Naciones Unidas. Según el licenciado López Morales, de resultarle desfavorable esa investigación, al Comisionado Especial se le haría más fácil recomendar su desaforo.

Tras evaluar la prueba, el Comisionado Especial determinó que la demanda federal por violación a los derechos civiles presentada por el licenciado López Morales no se sustentaba en ley alguna y además fue hecha de mala fe. De igual forma, indicó que existe una arraigada corriente de que los jueces, cuando actúan en su capacidad judicial, son inmunes de cualquier reclamación económica por alegados daños causados en el ejercicio de sus funciones. Así pues, el abogado que desee plantear una excepción a esta regla deberá hacerlo con extremo cuidado. Concluyó que todas las personas que fueron demandas ejercieron sus funciones adecuadamente, por lo que su reclamación carecía tanto de hechos como de fundamentos legales para sostenerse.

Posteriormente, el Comisionado Especial emitió su informe final en el que manifestó su preocupación por la salud mental del licenciado López Morales. En síntesis, arguyó que las alegaciones del querellado denotaban un padecimiento de sus facultades mentales. Añadió que la

presentación de la demanda por violación a sus derechos civiles demostraba fuertes indicios de paranoia y persecución. Concluyó que el querellado era una amenaza a la seguridad pública por lo que era necesaria su suspensión hasta tanto recibiera ayuda psiquiátrica.

Finalmente, como el licenciado López Morales no quiso someterse a exámenes psiquiátricos, el Comisionado Especial recomendó que se suspendiera de la práctica de la abogacía hasta que estuviese dispuesto a someterse a las evaluaciones correspondientes y presentara evidencia de ello. Esa recomendación fue acogida por el Tribunal Supremo de Georgia, que procedió a suspender al licenciado López Morales hasta tanto cumpliera con las condiciones establecidas.

Tras no cumplir con lo ordenado, el 24 de septiembre de 2007 el Tribunal Supremo de Georgia decretó la separación indefinida del licenciado López Morales del ejercicio de la abogacía en ese estado por razón de enfermedad mental.

Los escritos presentados por el licenciado López Morales ante este Tribunal, al igual que los que presentó ante los tribunales de Georgia, están plasmados de incoherencias, especulaciones y argumentos que, cuando menos, denotan que el licenciado López Morales padece de sus facultades mentales.

De entrada, en sus escritos ante este Tribunal, el licenciado López Morales le imputó al Tribunal Supremo de Georgia emitir una opinión que, según sus palabras, es

enferma y además violatoria del debido proceso de ley como de la igual protección de las leyes. Al amparo de esos argumentos, nos solicita que reevaluemos la prueba.

En el Informe de la Procuradora General, esta llama la atención a una declaración jurada suscrita por el licenciado López Morales en la que asegura que su teléfono fue interceptado en el estado de Georgia, que era seguido al parque donde solía caminar, además de en las calles donde residía. También juró que era perseguido en los supermercados, en los grupos de solteros a los que asistía, así como en la iglesia que frecuentaba los domingos. Si eso fuera poco, también arguyó que los empleados de un médico al que visitaba eran parte de la conspiración. Igualmente, afirmó que la policía de Puerto Rico continuó con la persecución una vez regresó a la Isla, ya que en varias ocasiones fue "atacado" en su residencia por personas que utilizaban el foco de un helicóptero para iluminarla. También, el licenciado López Morales aseguró que era perseguido cuando visitaba la biblioteca de la Escuela de Derecho de la Universidad de Puerto Rico.

En esta declaración, el licenciado López Morales también aseveró que varios jueces mintieron en un documento público por lo que se vio precisado a presentar una querella ante la Oficina de la Administración de los Tribunales. Sumado a esto, indicó que el Tribunal de Apelaciones violó su reglamento, como el derecho vigente

en varios casos en los que él figuró como representante legal de una parte.

A la luz de esta declaración, así como de los documentos que obran en el expediente, la entonces Procuradora General concluyó que el licenciado López Morales daba la impresión de padecer de sus facultades mentales, lo que confirmaba las conclusiones del Tribunal Supremo de Georgia. Sugirió someter al letrado a un procedimiento al amparo de la Regla 15 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A, o de lo contrario, darle entera fe y crédito a la determinación del estado de Georgia.

Luego de recibir este informe, nombramos al Lcdo. Hiram A. Sánchez Martínez como Comisionado Especial para que recibiera prueba sobre la salud mental del licenciado López Morales según establece la Regla 15(h) de nuestro Reglamento, supra. Procedimos a concederle término a las partes para que designaran sus peritos. El plazo expiró sin que las partes nombraran ningún perito por lo que procedimos a designar los miembros del panel. A la misma vez, apercibimos al licenciado López Morales que si se negaba a someterse a un examen médico, ello constituiría prueba *prima facie* de su incapacidad mental y además daría paso a su suspensión preventiva del ejercicio de la profesión.

El 28 de abril de 2010 el licenciado López Morales compareció. Inició su comparecencia con varias citas de la Constitución, de las Reglas de Evidencia, de diccionarios,

así como de jurisprudencia local y de otras jurisdicciones de Estados Unidos. Según él, la utilizaría para evaluar la orden del Comisionado Especial en cuanto a que se debía someter a exámenes psiquiátricos. Acto seguido, comenzó a desafiar a la Oficina de la Procuradora General. En específico, expresó lo siguiente con relación a la orden del Comisionado Especial de que se nombraran los peritos psiquiatras:

> [L]a Oficina de la Procuradora General de Puerto Rico, que es la oficina con la obligación legal de investigar la conducta de los abogados en Puerto Rico, **no le hizo caso** al no nombrar un perito psiquiatra. Se debe a que esas jóvenes saben que contra JLM hay una persecución política porque él le declaró la guerra a la Corrupción Institucionalizada y Vulgar en el Sistema Judicial de toda la Nación y sus territorios. Menos caso le hizo JLM **que conoce** las distintas técnicas de las muchas que usa la Corrupción Institucionalizada en Los Estados Unidos de América y sus territorios para callar o sacar de circulación a los abogados que le declaran la guerra a dicha corrupción… (Énfasis en el original.)
>
> Contestación a Orden del Comisionado Hiram Sánchez Martínez del 6 de abril de 2010, págs. 5-6.

Añadió que tiene una propuesta para eliminar la corrupción en el servicio público,

> al establecer que las violaciones a la Constitución y/o leyes donde una persona o el Estado (pueblo) sufra daños por la culpa o negligencia del juzgador o un empleado público, no sólo va a ser despedido de su puesto, sino que va a responder civilmente con sus bienes personales ante un panel de jurado del pueblo, cuya decisión será final y firme porque el pueblo es el soberano. También si el caso lo amerita, y frente a un

panel de jurado, será juzgado criminalmente, y de salir culpable, va a cumplir su sentencia junto con la población penal.

Íd., pág. 6.

Con relación al mismo asunto, expresó que

En Puerto Rico los abogados, entre ellos, le llaman al Sistema Judicial: **"El Monstro sin Cabeza"**. JLM decidió darle la guerra y no tiene riversa [sic] porque está en juego el futuro de toda nuestra descendencia y la evolución de la especie en sociedad….
…
La corrupción institucionalizada en los tribunales, usa como uno de sus mecanismos, la discreción judicial. Así permite que la corrupción vulgar florezca. (Énfasis en el original.)

Íd., pág. 7.

Por otra parte, señaló que la orden del Comisionado Especial es

inconsistente y engañosa. Es inconsistente porque acepta que la Procuradora General y JLM no nombraron peritos psiquiatras alguno, pero luego dice que la Procuradora nombró al Dr. Guillermo J. Hoyos Precssas, y JLM nombró a la Dra. Cynthia Casanova Pelosi. A mi juicio, es falso total. Si alguien se comunicó por cualquier medio con la doctora Cynthia Casanova Pelosi, y se identificó como JLM no es cierto. JLM **nunca** lo ha hecho ni lo hará porque no tiene la necesidad, ni ha autorizado a nadie que lo haga por él. Los que deben coger tratamiento psiquiátrico son los corruptos en todas sus manifestaciones porque esa es prueba de subdesarrollo mental.

Íd., pág. 8.

Posteriormente, dirigiéndose a los psiquiatras nombrados por el Comisionado, manifestó lo siguiente:

Doctores, ese es el pecado del abogado JLM, declararle la guerra a la Corrupción Institucionalizada y Vulgar en el Sistema Judicial de los Estados Unidos de América y sus territorios, **producida por jueces y políticos corruptos** de los gobiernos de los partidos políticos que vienen a los empleos públicos a enriquecerse y a enriquecerse sus amigos con los fondos públicos. Entonces a espaldas del pueblo, ponen a los jueces de los tribunales supremos a legislar para beneficio de ellos y los políticos, estableciendo una tiranía silente contra el pueblo. Esa es parte de la Corrupción Institucionalizada. JLM no claudicará [;] las ideas no se matan.… Estoy dispuesto a reunirme con ustedes, los tres juntos, para que aclaren dudas de este caso, pero no para evaluaciones mentales porque no las necesito. (Énfasis en el original.)

Íd., pág. 11.

Tras declarar no ha lugar esta moción, el licenciado López Morales curso dos nuevas comparecencias, que al igual que la anterior, están cargadas de insultos para los miembros de esta Curia, la Oficina del Procurador General y el Comisionado Especial designado. A continuación algunas de las expresiones del licenciado López Morales refiriéndose a la resolución de 28 de mayo de 2010:

2. Está basada en un fraude probado y admitido por la Oficina del Procurador General de Puerto Rico, que tenía el derecho de replicar mi contestación y no lo hizo. Admitió su fraude y mi prueba, al permanecer en silencio ante prueba que de no ser cierta la obligaba a contestar.
3. A partir de esa Resolución los seis señores jueces dejaron de ser un Tribunal imparcial, y se convirtieron en parte interesada. Por tal razón su conducta está sujeta a exámenes lógicos, inferencias, etc.
4. Al usar un fraude como base para una resolución judicial con la firma y sello del Tribunal, no pueden garantizarle al pueblo justicia…
…

> Esa Resolución de 28 de mayo de 2010 de este Tribunal, tiene a JLM sin cuidado porque es el producto de coconspiradores desesperados porque no tienen prueba para sostener sus imputaciones… Dicha Resolución refleja la ausencia de prueba contra JLM y están tratando de fabricarle un caso a JLM usando de manera tiránica a tres peritos médicos… Se puede observar hasta donde llega la Corrupción en los tribunales de la Nación y sus territorios… Nótese que cuando su agente, el **ex juez**, Hiram A. Sánchez Martínez, no tiene prueba para cumplir con el inciso (a) de la Regla 15 de su Reglamento, los seis señores "jueces" vienen en su ayuda y violan el debido proceso de ley al querer obstaculizar sin éxito **una defensa que nadie puede evitar: El que hace unas imputaciones viene obligado a producir la prueba**. Realmente me dan pena.
>
> Véase, <u>Contestación a Resolución del 28 de mayo de 2010 en el caso de epígrafe</u>, págs. 6-7.

Además, el licenciado López Morales tituló una de sus comparecencias escritas como "Moción Informativa e Inquisitiva". En esa misma moción se autodenominó "El Látigo de la Corrupción en el Sistema Judicial". Véase, <u>Moción Informativa e Inquisitiva</u>, pág. 8.

Son múltiples los insultos, vituperios y ofensas que el licenciado López Morales ha hecho a través de sus mociones a los miembros de este Tribunal, a la Oficina del Procurador General y al Comisionado designado. No transcribiremos cada una de sus alegaciones ya que muchas son sumamente ofensivas, desafiantes y ponen en entredicho la labor que realizan varios funcionarios públicos, sin base para sustentarlas.

Luego de recibir estas mociones, le concedimos término al licenciado López Morales para que informara qué

gestiones realizó con los tres peritos psiquiatras que se designaron para su evaluación. Le apercibimos que de no haber hecho gestión alguna, informara las razones para ello. Asimismo, le apercibimos que de negarse a someterse al examen médico ante los psiquiatras designados, ello se consideraría prueba *prima facie* de su incapacidad mental, por lo que podría ser suspendido preventivamente del ejercicio de la profesión, tal como dispone la Regla 15 de nuestro Reglamento.

Al transcurrir el término sin que el licenciado López Morales se sometiera a los exámenes psiquiátricos, solicitamos a las psiquiatras designadas que nos informaran si el querellado realizó alguna gestión para someterse a los exámenes correspondientes. Estas comparecieron informándonos que el licenciado López Morales no se comunicó ni hizo gestión alguna con ellas para someterse a la evaluación. Por esta razón, el Comisionado Especial concluyó que el licenciado López Morales, por sus dichos y conducta, no tenía la intención de cumplir con lo ordenado. Así pues, el Comisionado Especial culminó el trámite de este asunto, no sin antes recomendar "como medida de protección social,… [la] suspensión indefinida del ejercicio de la abogacía [del licenciado López Morales] hasta que … demuestre que se encuentra apto para reincorporarse al ejercicio de la profesión". Informe final del Comisionado, <u>supra</u>, pág. 29.

II

La Regla 15 del Reglamento de nuestro Tribunal, supra, es un mecanismo profiláctico que "establece el procedimiento para separar indefinidamente a un abogado del ejercicio de la abogacía, por razón de una condición mental o emocional que le impida desempeñarse competentemente". S. Steidel Figueroa, Ética y Responsabilidad Disciplinaria del Abogado, Publicaciones J.T.S., (2010), pág. 373. Este mecanismo es "parte del poder inherente que tiene este Tribunal para regular la profesión de [la] abogacía en Puerto Rico". In re Valentín Maldonado, 178 D.P.R. 906, 911 (2010). Véanse, además, In re Ramos Muñoz, 155 D.P.R. 255, 259 (2001); In re Fund. Fac. Der. E. Ma. De Hostos II, 150 D.P.R. 508, 511-512 (2000); In re Rodríguez Torres, 106 D.P.R. 698, 748 (1978); Ex parte Jiménez, 55 D.P.R. 54, 55 (1939); Coll v. Leake, Juez de Distrito, 17 D.P.R. 857, 866-868 (1911). Es corolario de "nuestro interés para garantizar el buen funcionamiento del sistema judicial y los mejores intereses de los funcionarios y abogados que en ella laboran y postulan…. Además, es parte de nuestro interés de que los abogados puedan realizar sus labores profesionales competente y diligentemente". In re Hernández Rodríguez, Op. de 8 de abril de 2011, 2011 T.S.P.R. 61, 2011 J.T.S. 66, 181 D.P.R. __ (2011). Véanse, además, In re Gutiérrez Santiago, 179 D.P.R. 739 (2010); Canon 18 de Ética Profesional, 4 L.P.R.A. Ap. IX. Ahora bien, distinto a los casos en los que separamos a los miembros de nuestra profesión por violaciones de los

Cánones de Ética Profesional, el mecanismo dispuesto en esta Regla no está catalogado como una sanción disciplinaria, sino más bien como una medida de protección social. Íd.

En síntesis, la Regla 15 provee para la designación de tres peritos psiquiatras. Uno es nombrado por el Comisionado designado, otro por el Procurador General y el último por el abogado querellado. Estos evaluarán al abogado y realizarán sus conclusiones. Con el beneficio de lo anterior, el Comisionado emitirá sus conclusiones y recomendaciones. Véase, Regla 15 de nuestro Reglamento, supra.

Ahora bien, en los casos en los que el abogado querellado se niegue a someterse a los exámenes médicos ordenados, el inciso (e) de la Regla 15, supra, dispone que ello constituirá prueba *prima facie* de la incapacidad del abogado que dará lugar a su suspensión preventiva.

III

De un examen del expediente ante nos, percibimos, al igual que el Tribunal Supremo de Georgia, que el licenciado López Morales muestra indicios fuertes de paranoia y persecución. Tal parece que su salud mental comenzó a dar indicios de estar afectada desde el momento en que inició la demanda en la corte federal del estado de Georgia contra varios funcionarios de la Rama Judicial de ese estado. Su comportamiento está plasmado de alucinaciones respecto a supuestas persecuciones por hacer valer sus derechos. En todo momento, el licenciado López

Morales ha responsabilizado al sistema judicial de que los procesos no finalicen según su percepción de lo que es el derecho y la justicia. Acusa a los funcionarios de ser agentes de la corrupción.

Como consecuencia de esos actos, el licenciado López Morales fue suspendido indefinidamente del ejercicio de la abogacía en el estado de Georgia porque, igual que hizo en Puerto Rico, presentó argumentos incongruentes que aparentan revelar que se encontraba incapacitado mentalmente para ejercer la abogacía. Además, se rehusó también a someterse a los exámenes psiquiátricos para evaluar su condición mental.

En cuanto al comportamiento del licenciado López Morales ante este Tribunal, hemos observado que, a pesar de las múltiples oportunidades y prórrogas que le concedimos para que se sometiera a los exámenes psiquiátricos correspondientes, se ha negado a hacerlo ya que considera que son parte de la persecución que contra él tienen el Comisionado designado y este Tribunal. Incluso, ignoró nuestros requerimientos a pesar de apercibirle que podrían dar paso a su suspensión del ejercicio de la abogacía. Como correctamente señaló el Comisionado Especial, "[d]e los escritos que el abogado ha sometido en los foros judiciales de Georgia y Puerto Rico nos parece razonable concluir que el licenciado López Morales … padece de un trastorno mental que lo incapacita en estos momentos para ejercer la profesión de abogado en Puerto Rico". Informe del Comisionado, pág. 30.

Con estos antecedentes, concluimos que las imputaciones infundadas y el tono de los escritos que el licenciado López Morales ha sometido en los foros judiciales de Georgia y Puerto Rico, así como su negativa a someterse a los exámenes médicos ordenados por este Tribunal a tenor de la Regla 15, supra, constituyen indicios suficientes y prueba *prima facie* de que este padece de un trastorno mental que lo incapacita en estos momentos para ejercer la profesión de abogado en Puerto Rico. El licenciado López Morales tuvo la oportunidad de evitar que operara la presunción *prima facie* que establece la Regla 15 de nuestro Reglamento, supra, pero no la rebatió.

Por esta razón, se suspende inmediata e indefinidamente al licenciado Juan López Morales del ejercicio de la abogacía. Se le impone el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos. Además, tiene la obligación de certificar ante este Tribunal el cumplimiento con lo anterior dentro de un término de treinta días, a partir de la notificación de esta Opinión.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Juan López Morales                    TS-5663




SENTENCIA

En San Juan, Puerto Rico, a 10 de enero de 2012.


Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, se suspende inmediata e indefinidamente al licenciado Juan López Morales del ejercicio de la abogacía. Se le impone el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos. Además, tiene la obligación de certificar ante este Tribunal el cumplimiento con lo anterior dentro de un término de treinta días, a partir de la notificación de esta Opinión.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal.



Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo